United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 8, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 03-50866

DELL COMPUTER CORPORATION,

　　　　　　　　　　Plaintiff - Counter Defendant - Appellee

versus

SIXTO RODRIGUEZ,

　　　　　　　　　　Defendant - Counter Claimant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before GARWOOD, WIENER, and DeMOSS, Circuit Judges.

WIENER, Circuit Judge:

In this diversity action, Dell Computer Corporation ("Dell") sued Sixto Rodriguez, the former managing director and chief executive officer of Dell's operations in Spain, asserting various causes of action based on several contracts between the parties. Rodriguez counter-claimed, also seeking damages for breach of the agreements. After a jury returned a verdict in favor of Dell for approximately $3.5 million, the district court entered judgment for Dell in that amount. Rodriguez timely appealed, asserting several points of error. We affirm in part, vacate in part, and reverse and remand in part.

I.  FACTS & PROCEEDINGS

A.  BACKGROUND

    1.  <u>The Dell-Rodriguez Relationship and the
        Underlying Contracts</u>

In 1991, Dell hired Rodriguez as the managing director and chief executive officer of Dell's operations in Spain. The parties executed an employment contract that entitled Rodriguez to severance benefits if Dell should terminate his employment without cause.[1] During the course of Rodriguez's employment, Dell issued stock options to him under various stock option agreements ("SOAs").

In 1992, Dell granted Rodriguez a special restricted SOA, called the "Penny Share Agreement" ("PSA"). Unlike other traditional fair-market-value SOAs that Dell granted to Rodriguez, the PSA entitled Rodriguez to purchase Dell stock for 1¢ per share, regardless of the market price of the stock at the time he exercised the option. The PSA specified that after Rodriguez's options vested and he exercised them, Dell would withhold 60% of the exercised shares for a period of two years; only at the end of this two year period would Rodriguez receive the stock certificates

---

[1] If Rodriguez was terminated <u>with</u> cause, though, he would not be entitled to receive any severance benefits. The employment agreement specifically permitted Dell to terminate Rodriguez for lack of honesty, neglect of the business, or conviction of a criminal offense that would damage Dell's image. The employment agreement further stated that if the basis for Rodriguez's disciplinary termination was "prove[d] unlawful or invalid," he would be entitled to his severance.

for those shares.  Further, a "claw-back" termination provision required Rodriguez to return any profits realized from the PSA if he breached his employment agreement or violated specified provisions of the PSA.[2]

On February 12, 1998, Rodriguez and Dell executed a four-page "Separation Agreement" that specified the terms and conditions of Rodriguez's termination and severance from employment by Dell. Part A of the Separation Agreement, titled "Stock Option Agreements," set out Rodriguez's "amended rights" regarding (1) the Penny Share Agreement, (2) a June 1994 SOA, and (3) his deferred bonus stock.  In Part B of the Separation Agreement, titled "Transition Arrangements," Dell agreed to retain Rodriguez as an unpaid honorary consultant through June 30, 1999.  Although the Separation Agreement immediately relieved Rodriguez of his management duties, his formal resignation was not to become effective until June 30, 1998, at which time his one-year role as honorary consultant would commence.  This time frame was adopted to allow additional stock options to vest under the PSA and under one of Rodriguez's other fair-market-value SOAs.

As honorary consultant, Rodriguez was to "promote and develop Dell's positive image in the Spanish market; in particular, and as reasonably requested by Dell from time to time, [Rodriguez would]

---

[2] In contrast, the traditional fair market value SOAs specified that on termination of his employment, Rodriguez would be entitled to no further stock, but that he could retain any profits already realized.

help enhance specific customer relationships."  Under the "Sole Discretion Clause," however, Dell retained the discretion to terminate Rodriguez under particular circumstances:

> 3)  Dell may terminate these Transition Agreements with immediate effect:-
>
>     (i)  if you are in breach of any of your obligations hereunder; or
>
>     (ii) if Dell has determined, in Dell's sole discretion, that your conduct is creating, or has created, a negative impact on Dell or on Dell's reputation in the Spanish market and Dell has provided you with written notice of such negative impact.

If Dell should terminate the Transition Agreements, it could withhold stock to which Rodriguez would otherwise have been entitled:

> 4)  Dell has the right to withhold any stock which would otherwise be released to you as set out in (A) above, in the event of termination pursuant to 3) above.

At the time that the parties executed the Separation Agreement, Rodriguez was unaware that Dell had commenced an internal investigation into the operations in Spain.

### 2.  Dell Investigates Suspicious Deals Involving Rodriguez and Terminates Him

On May 6, 1998, three months after the parties signed the Separation Agreement but almost two months before its effective date, Dell wrote to Rodriguez informing him that Dell had been conducting a wide-ranging examination of Dell Spain, and that it "revealed specific irregularities which appear to have been within

4

[Rodriguez's] responsibility." The May 6 letter identified eight separate irregularities under investigation.

Dell uncovered these improprieties when it began negotiating the severance of Bienvenido Valero, the finance manager for Dell's operation in Spain. In the course of those negotiations, Valero produced an employment contract dated 1992 (the "Valero Contract"), purportedly signed by Rodriguez, granting Valero a $1.7 million "golden parachute" in the event he was terminated. Dell had not previously seen the 1992 Valero Contract. Before Valero produced a copy of that agreement, Dell was aware of only a standard employment agreement of indefinite duration dated June 1991, which entitled Valero to only a limited severance as required under Spanish law.[3] When Dell became suspicious of the authenticity of the Valero Contract and asked Rodriguez to authenticate his signature on it, Rodriguez responded by stating only, "I don't know. It's a photocopy." Dell commissioned two handwriting experts to analyze the signatures on the Valero Contract; they concluded that the document was signed in <u>1997</u>, not 1992 as indicated by its date.

Dell then initiated a thorough audit of Rodriguez's activities and learned that he had engaged in several questionable financial

---

[3] In October 1995, Valero executed an agreement that appears to be an amendment to the June 1991 agreement. This amendment stated that it was an "[a]dditional clause or section to the employment contract signed in June 199<u>1</u> between" (emphasis added) Valero and Dell. The October 1995 amendment made no reference to a contract signed in 199<u>2</u>.

transactions with friends and family members in contravention of Dell's policies and practices. Included in these suspect transactions were payments of some $23,000 to an employment agency called Powerline. After further investigation, Dell learned that these payments were supposedly made for the services of Rodriguez's sister-in-law. Dell also discovered that Rodriguez had authorized payments of approximately $2,400 per month to a company called POAS for salary and office rent in the Canary Islands, where Dell did not maintain an office. It turned out that the managing director of POAS was Rodriguez's brother. Similarly, Dell determined that Rodriguez had authorized "installation and maintenance" payments of about $300,000 to "I.B. y Asociados." When Dell questioned Rodriguez about the I.B. y Asociados payments, however, he explained that they were for consultancy and lobbying commissions.

In light of these and other dubious transactions, Dell informed Rodriguez in the May 6 letter that all of his "legal entitlements from Dell" were being suspended pending an evidentiary hearing and review by Dell's Ethics Committee. Rodriguez disputed all of Dell's allegations and met with its representative to explain how the transactions were legitimate and justified.

In June 1998, after reviewing Rodriguez's conduct, Dell's Ethics Committee concluded that he had breached his obligations to Dell. In a letter dated June 26, Dell informed Rodriguez that the Ethics Committee had "found unanimously that the evidence presented justified the termination of all legal relationships" between the

6

parties and further "recommended the termination of the contractual relationship between [Rodriguez] and Dell Espana S.A."

### 3. Rodriguez Exercises His Stock Options, and Dell Initiates Criminal and Civil Proceedings in Spain

Two days after receiving Dell's June 26 letter, Rodriguez exercised numerous stock options under various SOAs, with the aggregate value of approximately $1.08 million. On July 13, July 20, and July 24, Rodriguez called his broker and exercised additional options worth some $753,000, $114,000, and $780,000, respectively. In all, Rodriguez realized profits of $2,728,898.11 on the exercise of these stock options.

In the fall of 1998, Dell initiated criminal proceedings against Rodriguez in Spain,[4] but the Spanish court ruled that there was insufficient evidence to sustain the criminal charge under Spanish law. Dell twice appealed that adverse decision in the Spanish courts without success. Next, Dell brought a civil suit against Rodriguez in Spain to recover the losses that Dell sustained as a result of Rodriguez's allegedly improper exercise of the stock options. In December 2001, though, Dell voluntarily dismissed this Spanish civil suit; on March 13, 2002, Dell filed the instant action.

### B. PROCEEDINGS

After failing in the Spanish courts, Dell sued Rodriguez in

_____

[4] As explained by Dell's counsel, Spanish law permits a civilian to initiate criminal proceedings against an individual.

Texas state court. Rodriguez removed the action to district court on grounds of diversity of citizenship. Dell's complaint asserted various causes of action, including fraud, breach of fiduciary duty, breach of the Separation Agreement, and breach of the Penny Share Agreement. Rodriguez counter-claimed, also alleging breach of the Separation Agreement by virtue of Dell's refusal to release particular SOAs, as well as claims grounded in replevin, defamation, abuse of process, and malicious prosecution.

In February 2003, Dell filed a motion for summary judgment on Rodriguez's counterclaims. The district court granted summary judgment against Rodriguez on all his counterclaims except those for breach of contract. Dell also filed a motion in limine to preclude Rodriguez and his counsel from making any reference at trial to "parol evidence to interpret the February 12, 1998 Separation Agreement," which motion the district court granted.

In March 2003, the parties' remaining claims were tried to a jury. During the trial, the district court granted Rodriguez's motion for judgment as a matter of law on Dell's fraud claim but denied all his and Dell's other motions for judgment as a matter of law. The jury returned a verdict in Dell's favor on each of Dell's contract claims and against Rodriguez on his breach of contract counterclaim. Dell was awarded approximately $2.7 million for breach of the Separation Agreement and almost $800,000 for breach of the Penny Share Agreement. The following month, the district court entered judgment on the verdict in favor of Dell for

8

$3,526,672.71, plus post-judgment interest and costs. Rodriguez filed a motion for judgment notwithstanding the verdict and for a new trial, which was denied.

Dell next filed a motion for attorney's fees under § 38.0001 of the Texas Civil Practice and Remedies Code.[5] The district court initially denied this motion, finding inadequate documentary support. Dell then filed a motion for reconsideration together with additional documentation supporting its attorney's fees request, which the district court granted. Rodriguez timely filed his notice of appeal.

## II. ANALYSIS

Rodriguez advances several claims on appeal.[6] We must determine whether the "Sole Discretion" clause in the Separation Agreement was ambiguous and whether Dell's claims for breach of the Penny Share and Separation Agreements were time-barred.

### A. STANDARD OF REVIEW

The interpretation of a contract and the determination of

---

[5] See TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 2002) ("A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for ... (8) an oral or written contract.").

[6] Both parties have filed "kitchen sink" briefs, advancing numerous points, alternative points, and rebuttal points. Our opinion addresses only those arguments that warrant extended treatment. Any contention not expressly addressed here is either without merit or is immaterial to our decision today.

ambiguity are questions of law, which we review <u>de</u> <u>novo</u>.[7] "This broad standard of review includes the initial determination of whether the contract is ambiguous."[8] We review a district court's evidentiary rulings for abuse of discretion.[9] We will reverse a judgment for an erroneous evidentiary rulings only when the challenged ruling affects a party's substantial rights.[10] We review <u>de</u> <u>novo</u> a district court's determination of the applicable limitations period.[11]

B.   THE DISTRICT COURT'S EXCLUSION OF PAROL EVIDENCE

In determining whether the district court committed reversible error by prohibiting Rodriguez from introducing parol evidence to explain the meaning of the Sole Discretion Clause of the Separation Agreement, we encounter two separate standards. On the one hand, interpretations of a contract and determinations of ambiguity are questions of law, which we review <u>de</u> <u>novo</u>. This includes a review of the district court's determination whether the contract is

---

[7] See <u>Reliant Energy Servs., Inc. v. Enron Canada Corp.</u>, 349 F.3d 816, 821 (5th Cir. 2003); <u>FDIC v. McFarland</u>, 33 F.3d 532, 539 (5th Cir. 1994).

[8] <u>Am. Totalisator Co. v. Fair Grounds Corp.</u>, 3 F.3d 810, 813 (5th Cir. 1993).

[9] <u>DIJO, Inc. v. Hilton Hotels Corp.</u>, 351 F.3d 679, 685 (5th Cir. 2003).

[10] <u>Id.</u> at 687.

[11] <u>Mayo v. Hartford Life Ins. Co.</u>, 354 F.3d 400, 409 (5th Cir. 2004).

10

ambiguous.[12] On the other hand, a district court's evidentiary ruling is generally reviewed for abuse of discretion, and we reverse only when the evidentiary ruling affects a party's substantial rights.[13] As we here conclude that the district court's evidentiary ruling was predicated on, and a corollary of, its construction of the contract as unambiguous, we review this decision <u>de</u> <u>novo</u>.   If we conclude <u>de</u> <u>novo</u> that the district court erred as a matter of law in ruling that the Sole Discretion clause is not ambiguous, it will follow that the district court's subsequent grant of Dell's motion in limine must necessarily be an abuse of discretion.[14]

1. <u>Sole Discretion clause unambiguous;
   introduction of parol evidence denied</u>

Section B(3)(ii) of the Separation Agreement, called the "Sole Discretion Clause" by the parties, allows Dell to "terminate these Transition Agreements with immediate effect if Dell has determined, in Dell's <u>sole discretion</u>, that [Rodriguez's] conduct is creating,

---

[12] <u>McFarland</u>, 33 F.3d at 539.  <u>Accord</u> <u>Reliant Energy</u>, 349 F.3d at 821;  <u>Am. Totalisator Co.</u>, 3 F.3d at 813.

[13] <u>Mayo</u>, 354 F.3d at 409; <u>DIJO, Inc.</u>, 351 F.3d at 687.

[14] "'[A]buse of discretion' is a phrase which sounds worse than it really is; it is simply a legal term of art which carries no pejorative connotations. . . ." <u>United States v. Logan</u>, 861 F.2d 859, 866 n.5 (5th Cir. 1988)(internal citations omitted). Thus, "when judicial action is taken in a discretionary matter," that action may be set aside by a reviewing court if "it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." <u>United States v. Walker</u>, 772 F.2d 1172, 1176 n.9 (5th Cir. 1985).

or has created, a negative impact on Dell or on Dell's reputation in the Spanish market and Dell has provided [Rodriguez] with written notice of such negative impact" (emphasis added). In ruling on Dell's motion for partial summary judgment, the district court stated:

> Rodriguez argues that the Separation Agreement's sole discretion clause only applies to his performance as a consultant and not his previous conduct as a Dell employee. Unfortunately for Rodriguez, this theory contradicts the plain language of the agreement. The Separation Agreement covers past behavior when it states that if Rodriguez' conduct "is creating, or has created, a negative impact on Dell," Dell may terminate the agreement and withhold any stock that was going to be released pursuant to the agreement. Rodriguez attempts to overcome the plain language of the Separation Agreement by offering parol evidence including deposition testimony and email correspondence. The Court, however, cannot look to parol evidence for the purpose of creating ambiguity.... The Court, therefore, finds that the plain language of the contract allowed Dell to look to Rodriguez' past conduct as a Dell employee in determining whether he had created a negative impact on Dell.

(emphasis added). The district court subsequently granted Dell's motion in limine, prohibiting Rodriguez from introducing any parol evidence to interpret the Separation Agreement.

On appeal, Rodriguez's first contention is that the district court erred in ruling that the Separation Agreement's Sole Discretion clause unambiguously permitted Dell to terminate Rodriguez's severance rights based on conduct that occurred either (1) before execution of the Separation Agreement (while Rodriguez was employed as Dell's managing director) or (2) after its execution (while Rodriguez would be serving as a consultant to Dell). It is evident from the above-quoted ruling that the

12

district court placed dispositive importance on the presence of the words "has created" in the Sole Discretion clause.

Rodriguez maintains that the Sole Discretion clause only refers to Dell's right to terminate "these Transition Arrangements," which addresses his future role as consultant. Rodriguez further contends that the Separation Agreement provides for the structured, periodic release of stock options, with the release of the shares corresponding to Rodriguez's two different roles. He insists that this further supports his interpretation of the Sole Discretion clause as applicable only to his conduct as consultant on a going-forward basis.

Rodriguez thus argues that the district court's ruling — that the Sole Discretion clause was unambiguous as a matter of law — was error. He charges that the term "has created" covers only those circumstances in which Dell learns of prior actionable conduct taken <u>after</u> Rodriguez signed the Separation Agreement. Rodriguez insists that, as the subject clause is susceptible to two reasonable but different interpretations — the one ascribed to it by the district court and the one he advances — the clause is ambiguous, entitling him to introduce parol evidence to support his interpretation. In addition to his own testimony, the key parol evidence that Rodriguez claims was improperly excluded includes (1) deposition testimony of Eric Meurice, the Dell employee who negotiated the Separation Agreement, indicating that the Sole Discretion clause was forward-looking only, and (2) an e-mail

13

written by Nicholas Taylor (the "Taylor Memo"), the lawyer for Dell who drafted the Separation Agreement, noting only "some penny stock as held back on good conduct conditions."[15]

## 2.   Preservation of error

Despite the district court's clear ruling on Dell's summary judgment motion and its grant of Dell's motion in limine, Dell asserts that "[n]o ruling by the trial court prevented Rodriguez from offering evidence regarding the interpretation and termination provision of the Separation Agreement."  Dell's contention is constructed on four elements.

First, Dell argues that because the ruling (that "the plain language of the contract allowed Dell to look to Rodriguez' past conduct as a Dell employee in determining whether he had created a negative impact on Dell") was in the context of a denial of Dell's motion for partial summary judgment, that ruling was merely dicta and therefore had "no effect on the district court's decision, which was based on other grounds."  Thus, argues Dell, the summary judgment ruling did not preclude Rodriguez from introducing parol evidence at trial to explain the Separation Agreement.

This contention is incorrect.  The district court granted Dell's motion in limine, which was expressly predicated on the court's earlier determination that the Sole Discretion clause was

---

[15] Rodriguez further complains that he was wrongly precluded from using the Taylor Memo to impeach Taylor on the witness stand.

unambiguous and clearly prevented Rodriguez from introducing the parol evidence in question at trial.

Second, Dell continues to urge that the district court's grant of Dell's motion in limine did not prevent Rodriguez from introducing parol evidence at trial, citing several examples of Rodriguez's purported introduction of extrinsic evidence regarding the interpretation of the Separation Agreement. But these cited instances do not address evidence concerning the Sole Discretion clause. In fact, a pre-trial discussion between the court and counsel confirms that both the court and Rodriguez's counsel understood that parole evidence concerning whether the Separation Agreement was exclusively forward-looking could not be presented at trial:[16]

> MR. HANTZES [Rodriguez's counsel]: "We put before the court the proposition that the agreement was exclusively forward-looking and the Court rejected that after announcement [sic] of the contract and found that it was unambiguous in that regard. . . There will be other issues in that document that we intend to raise at some point that are ambiguous, so that – I understand that the Court does not want parole evidence on the issue of whether it's forward-looking versus backward-looking. But there are other issues in that document, Your Honor, which are ambiguous in my analysis of the document.
>
> THE COURT: "Who do you propose to ask about that?"

---

[16] Dell stated at oral argument that the trial court modified its motion in limine to apply only to opening statements. The trial transcript shows, however, that Dell moved in limine to have the prior motion also apply to opening statements. The trial court replied, "But that's not admissible," and remarked that it trusted Rodriguez's counsel would not address this evidence in his opening.

15

MR. HANTZES: "Mr. Taylor. . ."

THE COURT: "Well, I suppose that the attorneys that represent the plaintiff and counter-defendant have sufficient experience that they know how to jump up and say, "I object" if you start asking a question that they think is not calling for admissible testimony."

Rodriguez absolutely was prevented from introducing parole evidence during trial regarding whether the contract was exclusively forward-looking. He was <u>not</u> permitted to introduce the Taylor Memo: When Rodriguez tried to do so, the district court sustained Dell's objection.

The third element that Dell advances is that Rodriguez made no offer of proof at trial regarding the parol evidence that he sought to introduce. It is true that Rodriguez did not make an offer of proof for Meurice's deposition testimony; Rodriguez is relying on evidence he put forth in opposing Dell's summary judgment motion. Insofar as the Taylor Memo is concerned, though, Rodriguez unmistakably made an offer of proof at trial when he tried unsuccessfully to introduce the memo to impeach Taylor on the stand.

As explained in <u>Mathis v. Exxon Corp.</u>, a "pre-trial objection is sufficient to preserve the error for appellate review."[17] A renewed objection at trial is no longer required to preserve

---

[17] 302 F.3d 448, 459 (5th Cir. 2002).

16

error.[18]  Furthermore, we have recognized that "excluded evidence is sufficiently preserved for review when the trial court has been informed as to what counsel intends to show by the evidence and why it should be admitted, and this court has a record upon which we may adequately examine the propriety and harmfulness of the ruling."[19]  Rodriguez explained his argument concerning the backward-looking clause in the Separation Agreement in his opposition to summary judgment, and he attached excerpts of the testimonial evidence that he proposed to introduce.  His actions were sufficient to inform the trial court of the substance of his evidence and to create an adequate record for our review.

Dell's last element in support of its contention is that Rodriguez failed to preserve error because he failed to seek a jury instruction regarding the district court's interpretation of the termination provision.  Dell contends that if Rodriguez believed that the Sole Discretion clause was ambiguous, he should have objected and requested a jury instruction asking the jury to interpret the clause.  But the question "[w]hether a contract is ambiguous is <u>a question of law for the courts to decide</u> by looking

---

[18] <u>Id.</u> at 459 n.16 (observing that the 2000 amendment to Federal Rule of Evidence 103(a) changed the law that had prevailed in this Circuit).  <u>See</u> <u>also</u> RUTTER PRACTICE GUIDE: FED. CIV. TRIALS & EV. CH. 4-F(6)(c) (2003).

[19] <u>United States v. Jimenez</u>, 256 F.3d 330, 343 (5th Cir. 2001) (citations omitted).  "The latter rule has particular force when the trial court makes clear that it does not wish to hear further argument on the issue."  <u>Id.</u>

17

at the contract as a whole in light of the circumstances present at the time the contract was executed."[20]  "Only when a contract is first determined to be ambiguous may the courts consider the parties' interpretation and admit extrinsic evidence to determine the true meaning of the instrument."[21]  As the district court ruled that the Sole Discretion clause was unambiguous as a matter of law, Dell's appellate contention that Rodriguez was required to seek a jury instruction on this issue to preserve error is feckless.  It was the district court's ruling on Dell's motion in limine that kept the jury from hearing Rodriguez's evidence on this issue.  The question whether the Separation Agreement was ambiguous is properly before us on appeal.

3.    The district court's ruling was reversible error.

    a.    Standard of Review

As stated above, if the district court erred as a matter of law in ruling that the Sole Discretion clause is unambiguous, a ruling that we review de novo, then of necessity that court's subsequent grant of Dell's motion in limine constitutes an abuse of discretion.[22]

---

[20] Kelly v. Rio Grande Computerland Group, 128 S.W.3d 759, 768 (Tex. App. - El Paso 2004, no pet.) (emphasis added) (citing Nat'l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995)).

[21] Id.

[22] Cf. Tapatio Springs Builders, Inc. v. Maryland Cas. Ins. Co., 82 F. Supp. 2d 633, 643 & n.78 (W.D. Tex. 1999).

        b.    The Sole Discretion Clause is
              Susceptible to Two Different but
              Reasonable Interpretations

     Texas law on contract construction and the admission of parol

evidence is well-settled:

     The primary concern of a court in construing a written
     contract is to ascertain the true intent of the parties as
     expressed in the instrument.  If a written contract is so
     worded that it can be given a definite or certain legal
     meaning, then it is not ambiguous.  Parol evidence is not
     admissible for the purpose of creating an ambiguity.

     If, however, the language of a policy or contract is subject
     to two or more reasonable interpretations, it is ambiguous.
     Whether a contract is ambiguous is a question of law for the
     court to decide by looking at the contract as a whole in light
     of the circumstances present when the contract was entered.
     Only where a contract is first determined to be ambiguous may
     the courts consider the parties' interpretation, and admit
     extraneous evidence to determine the true meaning of the
     instrument.

     An ambiguity in a contract may be said to be "patent" or
     "latent." A patent ambiguity is evident on the face of the
     contract.  A latent ambiguity arises when a contract which is
     unambiguous on its face is applied to the subject matter with
     which it deals and an ambiguity appears by reason of some
     collateral matter.[23]

     Applying these principles to the Separation Agreement and the

facts of this case, Rodriguez makes a compelling argument that the

Sole Discretion clause contains a latent ambiguity.[24]   It is

_____

     [23] CBI Indus., Inc., 907 S.W.2d at 520 (citations omitted).
See also H.E. Butt Grocery Co. v. Nat'l Union Fire Ins. Co., 150
F.3d 526, 529 (5th Cir. 1998).

     [24] See Loaiza v. Loaiza, 130 S.W.3d 894, 905 (Tex. App. –
Fort Worth 2004, no pet. h.) ("Although the determination of
whether a contract is ambiguous should be limited to an
examination of the language of the agreement, appellate courts
may examine extrinsic evidence of 'surrounding circumstances' or
'the subject matter of the contract' to determine if a latent

19

anything but pellucid whether the "or has created" language in the clause — which permits Dell to terminate Rodriguez if he "is creating, or has created, a negative impact on Dell or on Dell's reputation in the Spanish market" — is only prospective or is both retrospective and prospective. It is susceptible of either reading, both of which are reasonable. As this is the very definition of ambiguity, the district court's grant of summary judgment in Dell's favor on this point was reversible error. Rodriguez should have been allowed to submit parol evidence to the jury in an effort to convince it that his interpretation of this ambiguous clause of the contract was correct.[25] We therefore reverse the district court's ruling that the Sole Discretion clause was unambiguous and remand for further proceedings on this issue.

C. STATUTE OF LIMITATIONS

Rodriguez's second appellate point is that Dell's claims for breach of contract under the Penny Share and the Separation Agreements were time-barred by Texas's four-year statute of limitations for contract claims.[26] Dell's claims, Rodriguez

_____

ambiguity exists.").

[25] See Geoscan, Inc. of Tex. v. Geotrace Techs., Inc., 226 F.3d 387, 390 (5th Cir. 2000) ("If a contract is ambiguous, 'summary judgment is inappropriate because the interpretation of a contract is a question of fact.'" (citations omitted)).

[26] See TEX. CIV. PRAC. & REM.CODE ANN. § 16.004; Willis v. Donnelly, 118 S.W.3d 10, 28 (Tex. App. - Houston [14 Dist.] 2003, no pet.) ("A breach of contract action is subject to a four-year statute of limitations.").

20

contends, accrued when he allegedly back-dated the Valero contract and engaged in other questioned behavior; Dell concedes to having received the "obviously false" Valero Contract on March 6, 1998. In its Texas action, which was not filed until March 13, 2002, Dell asserted claims for two distinct breaches —— one of the Separation Agreement and the other of the Penny Share Agreement. Under Texas law, "[g]enerally, a cause of action accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy."[27] "A breach of contract claim accrues when the contract is breached."[28] The time at which a cause of action for breach of contract accrues is a question of law.[29]

### 1.  Separation Agreement

Rodriguez argues that the trial court erred in not dismissing Dell's Separation Agreement claim because it was filed more than four years after Dell learned of his dubious conduct. Assuming that Rodriguez preserved this claim for appeal, however, Dell's claim for breach of the Separation Agreement was clearly not barred by

---

[27] Willis, 118 S.W.3d at 28 (citing Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 514 (Tex. 1998)).

[28] Id. (citing Stine v. Stewart, 80 S.W.3d 586, 592 (Tex. 2002)).

[29] Willis, 118 S.W.3d at 28 (citing Moreno v. Sterling Drug, Inc., 787 S.W. 2d 348, 351 (Tex. 1990)).

the relevant statute of limitations.[30]

Rodriguez's pre-termination conduct, which underlies Dell's other claims, does not form the basis of Dell's claim for breach of the Separation Agreement.[31] Rather, this claim is grounded in Rodriguez's exercise of stock options after Dell terminated that contract. As Dell's counsel pointed out at oral argument, Rodriguez's improper pre-termination conduct underlies his counterclaim against Dell, not Dell's claim against him. Whether Dell had sole discretion to terminate Rodriguez for his behavior pre-dating the Separation Agreement is ambiguous and a matter for the court to decide on remand as we have stated above. Assuming, however, that Dell's decision was proper, there was no breach of the Separation Agreement until Rodriguez refused to accept his termination and proceeded to exercise stock options. As it is clear that (1) Dell's Separation Agreement claim is based on Rodriguez's exercise of stock options after Dell terminated that Agreement on June 26, 1998, and (2) Dell brought its claim on March 13, 2002 — less than four years after such exercise — the trial court did not err in holding that Dell's claim under the Separation

---

[30] Dell argues that Rodriguez did not properly preserve for appeal his statute of limitations arguments under the Separation Agreement because he did not raise it in his Rule 50 motions for judgment notwithstanding the verdict. As we find that Dell's Separation Agreement claim is not time-barred, we need not address whether the issue was properly preserved.

[31] We address below Dell's contention that its claim for breach of the PSA is founded on Rodriguez's refusal to return his profits from the penny shares.

22

Agreement is not time-barred.

## 2. Penny Share Agreement

Rodriguez likewise contends that, under Dell's theory of the case, he breached the PSA when the Valero contract was backdated in 1997 and when the irregularities with the vendor transactions occurred. Thus, argues Rodriguez, the claim for breach of the PSA, which was asserted in the suit filed by Dell on March 13, 2002, had prescribed; as a result, he is entitled to judgment as a matter of law on Dell's Penny Share claims.[32] Dell counters that the terms of the PSA require Rodriguez to return any gains that he recognized on the penny stocks if he violates or breaches any provision of his employment agreement with Dell. Rodriguez did not violate the PSA, argues Dell, until he refused to return past penny share profits following Dell's determination that he had breached his employment agreement and demanded that he disgorge those profits. This disagreement thus turns on whether the PSA was breached (1) by Rodriguez's pre-termination misconduct or (2) by his post-termination refusal to return his penny share profits after Dell demanded the return of those profits.

Rodriguez's duty to reimburse Dell for his penny stock gains is triggered by a "breach" of any provision of his employment agreement. Unlike Dell's claim under the Separation Agreement, its

---

[32] See Lincoln v. Case, 340 F.3d 283, 289-90 (5th Cir. 2003) ("We review the district court's ruling on a motion for judgment as a matter of law de novo, applying the same legal standard as the district court.").

23

PSA cause of action does not arise from injury to Dell resulting from Rodriguez's post-termination conduct; he merely became liable for the return of his profits when he breached his <u>employment</u> agreement. We hold as a matter of law that it was Rodriguez's breach of the employment agreement itself that violated the PSA, so the statute of limitations began to run on this earlier date.[33] Dell advances two arguments in its defense which we now address.

### a. Continuing Contract

As noted, the general rule in Texas is that contracts are breached, and the statute of limitations begins to run, when "facts come into existence that authorize a claimant to seek a judicial remedy."[34] "A cause of action arising out of contractual relations between the parties accrues as soon as the contract or agreement is

---

[33] Dell also contends that Rodriguez's failure to seek a jury instruction with respect to the accrual of Dell's cause of action bars his complaint on appeal. This argument fails, however, given the testimony of Nicholas Taylor that he received a copy of the allegedly fraudulent Valero contract on March 6, 1998, and that he immediately knew it was fraudulent because it was "preposterous." Also undisputed is the fact that by March 11, 1998, a formal Dell investigation had determined that the contract was fraudulent. If "the facts as to when the cause of action accrued were undisputed, it was not necessary to obtain jury findings as to that fact." <u>Sun Medical, Inc. v. Overton</u>, 864 S.W.2d 558, 561 (Tex. App. – Fort Worth 1993, writ denied). As a result, Rodriguez's Rule 50 motions on this ground should have been granted.

[34] <u>Willis</u>, 118 S.W.3d at 28 (citing <u>Johnson & Higgins</u>, 962 S.W.2d at 514).

24

breached."[35]  "A continuing contract is an agreement where the contemplated performance and payment are divided into several parts or, where the work is continuous and indivisible, the payment for work is made in installments as the work is completed."[36]  On a continuing contract, however, the statute of limitations does not commence to run until the contract is terminated or fully performed.[37]  Dell urges that the PSA was a "continuing contract" for which limitations could not begin to run until Dell made the determination that Rodriguez's conduct was in breach of his obligations <u>and</u> elected to terminate his continuing relationship with Dell, thereby triggering the clawback provision.

In Texas, parties typically enter into continuing contracts for projects such as construction, during which performance is made

---

[35] <u>Wichita Nat'l Bank v. U.S. Fidelity & Guaranty Co.</u>, 147 S.W.2d 295, 297 (Tex. Civ. App. – Fort Worth 1941, no writ). <u>See also</u> <u>Slusser v. Union Bankers Ins. Co.</u>, 72 S.W.3d 713, 717 (Tex. App. – Eastland 2002, no pet'n) ("A cause of action generally accrues when the wrongful act effects an injury, regardless of when the plaintiff learned of the injury")(citing <u>Moreno</u>, 787 S.W.2d at 351).

[36] <u>Hubble v. Lone Star Contracting Corp.</u>, 883 S.W.2d 379, 381 (Tex. App. – Fort Worth 1994, writ denied)(citing <u>Godde v. Wood</u>, 509 S.W.2d 435, 441 (Tex. Civ. App. – Corpus Christi 1974, writ ref'd n.r.e.); <u>City & County of Dallas Levee Improv. Dist. v. Halsey, Stuart & Co.</u>, 202 S.W.2d 957, 961 (Tex. Civ. App. – Amarillo 1947, no writ)).

[37] <u>Kona Tech. Corp. v. Southern Pacific Transp. Co.</u>, 225 F.3d 595, 606 (5th Cir. 2003).  If a continuing contract calls for fixed, periodic payments, however, a separate cause of action accrues at each missed payment.  <u>Davis Apparel v. Gale-Sobel</u>, 117 S.W.3d 15, 18 (Tex. App. – Eastland 2003, no pet. h.).

in measurable increments and compensated based on the value of work completed in each period, and for which there is a clear end-point.[38]  To be sure, not every contract that Texas courts have declared to be a "continuing contract" fits this definition.[39]

[38] See Hubble, 883 S.W.2d 379, 381-82 (Tex. App. – Fort Worth 1994, writ denied) ("Typically, construction is performed under a continuing contract"); Thomason v. Freberg, 588 S.W.2d 821, 828 (Tex. App. – Corpus Christi 1979, no writ)(finding a continuing contract when the services performed by a contractor were not indefinite in nature, but were specific tasks meant to continue until home improvements were completed); Godde, 509 S.W.2d at 441 ("[B]oth plaintiff and defendant clearly contemplated a continuing contract, i.e., the contract was to continue until plaintiff had completed the improvements in accordance with the plans and specifications.  Where a claim for work, labor, or materials performed or furnished is the outgrowth of an entire contract for continuous work, labor or materials (until the work project has been completed), the claim with [sic] be treated and considered as an entire demand and limitations will not commence to run until the contract has been finished")(citations omitted); Alexander & Polley Const. Co. v. Spain, 477 S.W.2d 301, 302-03 (Tex Civ. App. – Tyler 1972, no writ)(ruling that a plaintiff's agreement to remove dirt from the premises of the defendant at a rate of $.15 per cubic foot was a continuing contract – to continue until the plaintiff had removed all of the dirt – and that the right to demand full payment could not accrue until all of the dirt had been moved and the final amount could be calculated); Halsey & Stuart, 202 S.W.2d at 960-61 (holding that a corporation providing bond exchange services for the city over the course of several years with payment due upon consummation of the plan had entered into a continuing contract which tolled the statute of limitations until the contract had been terminated).

[39] See City of Corpus Christi v. Taylor, 126 S.W.3d 712, 722,  725 (Tex. App. – Corpus Christi 2004, no pet. h.) (holding that a restrictive covenant running with the land was a continuing contract of indefinite duration, for purposes of deciding whether the contract was terminable at will by either party; Wilson v. Woolf, 274 S.W.2d 154, 156 (Tex. Civ. App. – Fort Worth 1955, writ ref'd n.r.e) (describing a contract between ex-spouses for the return of funds exchanged during the marriage in the form of lifetime payments to the wife as a "continuing

Still, Dell has referred us to no authority — and we have found none on our own — supporting the proposition that an employment compensation agreement, payable at fixed intervals, should be treated as a continuing contract. Indeed, Rodriguez points to at least one Texas Court of Appeals case holding that "[t]he cause of action for the breach of an employment contract arises immediately upon the breach of the contract and limitations run from that time."[40]

Dell insists that its claim against Rodriguez is for breach of the PSA, not breach of his employment contract. By its terms, however, the PSA specified the regular issuance of shares to Rodriguez, contingent on his continued <u>employment</u> with Dell. We decline the invitation to be the first court to expand the definition of "continuing contract" to include such an employment agreement.

b.  <u>Discovery Rule</u>

Dell also contends that the so-called discovery rule defeats any limitations defense that might bar its PSA claim against Rodriguez. Although limitations usually begin to run when facts have come into existence that authorize a claimant to seek a

contract" under which the wife would be entitled to sue without voiding the contract).

[40] <u>Sun Medical</u>, 864 S.W.2d at 560 (holding that the statute of limitations began to run immediately on an employer's breach of a commission contract with its employee).

27

judicial remedy, "[t]he discovery rule. . . , when applicable, provides that limitations run from the date the plaintiff discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury."[41]  We have ruled that under Texas law, "[t]he discovery rule affords protection in only limited instances, applying in (1) cases of fraudulent concealment; and (2) when the nature of the injury is inherently undiscoverable and the injury itself is objectively verifiable."[42]

Even assuming, arguendo, that the discovery rule tolled the statute of limitations until Dell learned of Rodriguez's breach, that occurred no later than March 6, 1998, when Nicholas Taylor (Dell's attorney who drafted the Separation Agreement) received the Valero contract.  Taylor testified that, as soon as he read the Valero contract, he knew that it was a "false contract" because its contents were "preposterous" and "outrageous" and so "totally unusual" as to "beg disbelief."  Thus, even under the discovery rule, the statute of limitations would have started to run on March

---

[41] Willis v. Maverick, 760 S.W.2d 642, 644 (Tex. 1988) (citation omitted).  See also Booker v. Real Homes, Inc., 103 S.W.3d 487, 492 (Tex. App. - San Antonio 2003, pet. denied) ("[A]ll that is required to commence the running of the limitations period is the discovery of an injury and its general cause, not the exact cause in fact and the specific parties responsible.").

[42] Jackson v. West Telemarketing Corp. Outbound, 245 F.3d 518, 524 (5th Cir. 2001) (citations omitted) (emphasis added); accord Nat'l Western Life Ins. Co. v. Rowe, 86 S.W.3d 285, 297 (Tex. App. - Austin 2002, pet. filed) (citations omitted).

28

6, 1998, making Dell's suit, filed on March 13, 2002, (more than four years later), time-barred.

### III. CONCLUSION

Although we conclude that Dell's claim under the Separation Agreement is not time-barred, its claim under the Penny Share Agreement is.[43] Accordingly, we reverse the portion of the judgment implementing the jury's verdict in favor of Dell on the Penny Share Agreement, and we remand this action to the district court with instructions to enter judgment in favor of Rodriguez on Dell's breach of the Penny Share Agreement claim.

We also hold that (1) the trial court ruled incorrectly that the Separation Agreement was unambiguous, and (2) Rodriguez properly preserved this claim for appeal. We further conclude that the trial court's erroneous ruling on the question of ambiguity resulted in the improper exclusion of parole evidence favorable to Rodriguez's proffered interpretation of the Separation Agreement; for this reason we reverse and remand for further proceedings not inconsistent with this opinion. In light of this disposition, the district court's order awarding Dell attorney's fees must be

---

[43] As we decide that Dell's claim under the Penny Share Agreement is time-barred, we need not address Rodriguez's argument that the merger clause in the Separation Agreement caused the PSA's "clawback" provision to be replaced by remedies in the Separation Agreement. Likewise, our disposition of Dell's breach of contract claims makes it unnecessary to address Rodriguez's requests for new trial or judgment notwithstanding the verdict.

29

vacated as well, albeit without prejudice.

AFFIRMED in part; VACATED in part; REVERSED in part and REMANDED for further proceedings.