United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 17, 2005**

Charles R. Fulbruge III
Clerk

In the United States Court of Appeals

For the Fifth Circuit

_____

No. 04-10031

_____

ANN TENISON HEREFORD WEBB; LIZANN TENISON WEBB; BYRON JAMES WEBB; CAMILLE ELIZABETH WEBB SEWELL,

Plaintiffs - Appellants,

versus

CITY OF DALLAS, TEXAS; CITY OF DALLAS PARKS AND RECREATION DEPARTMENT; CITY OF DALLAS PARKS AND RECREATION BOARD; PAUL DYER, DIRECTOR, CITY OF DALLAS PARKS AND RECREATION DEPARTMENT,

Defendants - Appellees.

_____

Appeal from the United States District Court
For the Northern District of Texas

_____

Before HIGGINBOTHAM, BARKSDALE, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiffs Ann Tenison Hereford Webb, Lizann Tenison Webb, Byron James Webb, and Camille Elizabeth Webb Sewell (collectively the "Webbs") appeal the district court's take-nothing judgment with respect to their claims against the City of Dallas. The Webbs asserted that the City violated a condition contained in deeds conveying property to the City which provided that the property would revert to the grantors "or their heirs" if the property ceased

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

to be used as a public park.  The Webbs alleged that they were heirs under the deeds.  A jury found to the contrary, and the district court entered judgment based on this finding.  We now affirm.

I

We set forth the factual background of this case at length in our prior opinion, and will not retrace it here.[1]  Following remand to the district court, the case was tried to a jury.  The court submitted a series of special interrogatories to the jury.  Question One inquired whether the Webbs "prove[d] that in the Tenison Deeds, the grantors, Edward O. and Annie M. Tenison, clearly intended to refer to the [Webbs] by the use of the word 'heirs'?"  The court instructed the jury to answer "Plaintiffs did prove," or "Plaintiffs did not prove."  In the event that the jury chose the latter answer, they were instructed to stop and answer no further questions.  Following several days of deliberations, the jury answered Question One by marking "Plaintiffs did not prove."  Upon consideration of the verdict, the court entered a take-nothing judgment against the Webbs.  The Webbs filed a timely notice of appeal.

II

Of the eight points of error raised by the Webbs on appeal, only one merits discussion: whether the district court erred when it submitted Question One to the jury.  Specifically, the Webbs argue that the question of whether they were heirs under the deeds was not

---

[1] *See Webb v. City of Dallas*, 314 F.3d 787, 788-90 (5th Cir. 2002).

properly before the district court and, in the alternative, that this question was one of law to be resolved by the court.  We address these arguments in turn.

A

The Webbs argue that the meaning of the word "heirs" as used in the deeds was not properly before the district court because (1) it was conclusively answered in our prior opinion, and (2) it is a question of state law that must be answered in a separate heirship proceeding before a state court.  These arguments are without merit.

First, our prior decision did not conclusively adjudicate the question of whether the Webbs are "heirs" under the Tenison deeds. Rather, we were called upon to determine whether the Webbs claimed an interest in the property transferred by the deeds sufficient to satisfy the jurisdictional injury-in-fact requirement of Article III.  Looking to the pleadings, we determined that the Webbs had averred facts adequate to meet constitutional standing requirements.[2] Importantly, we noted that the "Webbs may ultimately fail to prove ownership or any property interest entitlement to the Tenison

---

[2] *See Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 529 (5th Cir. 1996) ("'At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)); *Cramer v. Skinner*, 931 F.2d 1020, 1025 (5th Cir. 1991) ("When a court considers standing on a motion for a 12(b) dismissal, it must accept the allegations in the pleadings as true."); *see also Barrett Computer Servs., Inc. v. PDA, Inc.*, 884 F.2d 214, 219 (5th Cir. 1989) ("[I]n cases in which the merits of the claims asserted are intertwined with the jurisdictional issue of standing, challenges to standing are frequently resolved in summary judgment proceedings . . . *or at a trial on the merits*." (emphasis added)).

3

property."[3]  It is clear from this statement and our analysis that we did not render a final ruling on the meaning of the word "heirs" as used in the deeds.

Second, the Webbs argue that it was unnecessary for the district court to determine whether they would take as heirs under the deeds; that this question should have been answered in a separate state heirship proceeding following a determination of whether the property had reverted under the deeds.  Under Texas law, persons claiming to be entitled to property in a decedent's estate may initiate an heirship proceeding to determine "who are the heirs . . . and their respective shares and interests."[4]  Such proceedings are appropriate when a decedent dies "intestate."[5]  Whether the Webbs are entitled to bring an heirship proceeding is irrelevant to the present suit, in which the Webbs seek to establish an interest in the property via the deeds.  In order to ascertain whether the Webbs were entitled to take under these *inter vivos* conveyances, the district court was required to interpret the language of the deeds.

In short, we conclude that the question of whether the Webbs were "heirs" under the deeds was properly before the district court.

B

---

[3] *Webb*, 314 F.3d at 791.

[4] TEX. PROB. CODE ANN. § 48(a) (Vernon 2003); *see* TEX. PROB. CODE ANN. § 49(a) (Vernon 2003); TEX. PROB. CODE ANN. § 54 (Vernon 2003).

[5] TEX. PROB. CODE ANN. § 48(a).

4

The Webbs also contend that the district court erred by submitting a purely legal question of deed construction to the jury. They claim that the unambiguous language of the deeds created an executory interest in the property which would vest in the lineal descendants of the Tenisons alive when the deed conditions were violated.  The Webbs did not object to the submission of Question One to the jury; accordingly, our review is for plain error only.[6] "For an appellant to prevail under the plain error standard, it must show 1) that an error occurred; 2) that the error was plain, which means clear or obvious; 3) the plain error must affect substantial rights; and 4) not correcting the error would seriously impact the fairness, integrity, or public reputation of judicial proceedings."[7]

Under Texas law, both the interpretation of an unambiguous deed and the determination of whether a deed is ambiguous are questions of law for the court.[8]  If the court determines that a deed is ambiguous, it may submit the deed to a jury for resolution of the ambiguity.[9]  The court need not make an express finding of ambiguity

---

[6] *See Septimus v. Univ. of Houston*, 399 F.3d 601, 606-07 (5th Cir. 2005).

[7] *Id.* at 607.

[8] *See Dell Computer Corp. v. Rodriguez*, 390 F.3d 377, 384 (5th Cir. 2004); *Propulsion Techs., Inc. v. Attwood Corp.*, 369 F.3d 896, 900 (5th Cir. 2004); *Temple-Inland Forest Prods. Corp. v. United States*, 988 F.2d 1418, 1421 (5th Cir. 1993).

[9] *See Exxon Corp. v. W. Tex. Gathering Co.*, 868 S.W.2d 299, 302 (Tex. 1993).

in order to do so; if the court submits the issue to the jury, we may presume that the court found the deed ambiguous.[10]

When seeking to determine whether a deed is ambiguous, Texas courts look to the intent of the contracting parties as expressed within the "four corners" of the document.[11] "The four corners rule requires the court to ascertain the intent of the parties solely from all of the language in the deed."[12] If the court cannot determine the intent of the parties from the plain language of the deed, the court may apply "applicable rules of construction."[13] If, after the application of the rules of construction, the language of the deed is still ambiguous, the court may admit and consider extrinsic evidence to assist it in its interpretive task.[14] "An instrument is ambiguous only when the application of these rules leaves it unclear which of two reasonable meanings is the correct one."[15]

The deeds at issue here provide that if the property is not used by the City as a public park, the City ceases to use the

---

[10] *Id.* ("While the trial court here never made an express finding that the contract was ambiguous, such a determination was necessary to its submission of a jury question inquiring into the [interpretation of the contract].").

[11] *Cherokee Water Co. v. Freeman*, 33 S.W.3d 349, 353 (Tex. App.--Texarkana 2000, no pet.) (citing *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991)).

[12] *Id.* (citing *Concord Oil Co. v. Pennzoil Exploration & Prod. Co.*, 966 S.W.2d 451, 465 (Tex. 1998)).

[13] *Id.*

[14] *Id.* (citing *Stauffer v. Henderson*, 801 S.W.2d 858, 863 (Tex. 1990)).

[15] *Id.*

property for park purposes, or the name of the park is changed, the City's title to the property shall cease, "and said property . . . shall at once revert to and vest in us [the Tenisons] or our heirs, and it shall be lawful for us or our heirs to re-enter upon, take, repossess and enjoy all and singular the property hereby granted as in our former estate."  Looking to the deed as a whole, it is apparent that the Tenisons sought by this language to grant to the City a fee simple interest in the land subject to a condition subsequent that the City maintain the property as a public park.[16] This property interest was passed from the Tenisons to their surviving children by operation of the residuary clauses of their wills.  Importantly, these wills did not transfer the right of re-entry to the Webbs' ancestor who predeceased the Tenisons.

In addition to the creation of a right of re-entry, the Webbs urge that the deeds conveyed to the "heirs" an executory interest in the property.  Under this theory, the word "heirs" in the deeds refers to all lineal descendants of the Tenisons living at the time the deed conditions were violated.  This conveyance is impermissible as it contravenes the rule against perpetuities, which provides that "no interest is valid unless it must vest, if at all, within twenty-one years after the death of some life or lives in being at the time

---

[16] *See Lawyers Trust Co. v. City of Houston*, 359 S.W.2d 887, 890 (Tex. 1962) (holding that nearly identical language in a conveyance created a fee simple subject to a condition subsequent).

of the creation of the interest."[17]  When the deeds were executed, the City could have maintained the land as a public park for an indefinite period of time.  Thus, it was possible at the time the deeds were made that the lineal descendants of the Tenisons alive when the City ceased using the property as a public park would not be determined until well after the perpetuities period ended.  Under Texas law, if a deed is equally open to two constructions, "effect will be given to the construction which renders the agreement valid rather than void."[18]  Thus, the Webbs' proffered interpretation of the deed must be rejected.  Further, no alternative interpretation of the deeds that would vest rights in the Webbs is available.

Because the word "heirs" in the deeds cannot, as a matter of law, refer to the Webbs, the district court committed plain error by submitting Question One to the jury.  However, the district court's take-nothing judgment is correct as a matter of law for this very reason.  Further, to the extent that the court omitted any necessary factual issue in the jury instructions, we deem the court to have made such a finding in accord with the judgment.[19]  Accordingly, we conclude that the district court's submission of Question One to the

---

[17] *Hamman v. Bright & Co.*, 924 S.W.2d 168, 171 (Tex. App.-Amarillo 1996), *vacated pursuant to settlement*, 938 S.W.2d 718 (Tex. 1997) (citing *Peveto v. Starkey*, 645 S.W.2d 770, 772 (Tex. 1982); *Foshee v. Republic Nat'l Bank of Dallas*, 617 S.W.2d 675, 677 (Tex. 1981)).

[18] *Conquistador Petroleum, Inc. v. Chatham*, 899 S.W.2d 439, 442 (Tex. App.--Eastland 1995, writ denied) (citing *Kelly v. Womack*, 268 S.W.2d 903, 906 (Tex. 1954)).

[19] FED. R. CIV. P. 49(a)

jury, while erroneous, did not affect the Webbs' substantial rights.[20]

## III

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[20] *See Hobart Bros. Co. v. Malcolm T. Gilliland, Inc.*, 471 F.2d 894, 905 (5th Cir. 1973) (applying harmless error analysis to errors in a jury charge in a civil case).