FILED

NOT FOR PUBLICATION

MAY 17 2011

**UNITED STATES COURT OF APPEALS**

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| **KARYN DAVENPORT**, | No. 10-15554 |
| Plaintiff - Appellant, | D.C. No. 2:08-cv-01511-JCM-GWF |
| v. | |
| **ALBRIDGE SOLUTIONS, INC.; PFPC, INC.**, | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted April 11, 2011
San Francisco, California

Before:    **KOZINSKI**, Chief Judge, **HAWKINS** and **GOULD**, Circuit Judges.

The Retention Incentive Agreement specifies that "cause" includes an

employee's acts of "fraud" or "dishonesty," which PNC (PFPC's parent company)

would determine using the same "standards applicable generally to conduct of

similarly situated employees." The Agreement didn't limit the standards to only

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

those incorporated by reference. See Dissent at 1. Davenport had every opportunity to familiarize herself with PNC's standard policies prior to signing the Agreement; instead, she chose not to ask "any questions about the [A]greement" because it seemed "straightforward."

The standards for determining "cause" include PNC's Bonding Requirements Policy, which PNC reproduced in its Employee Manual. Entering into "a pre-trial disposition program" for "passing bad checks" was listed in the Policy as a specific example of a "dishonest or fraudulent act[]," even if the act was committed prior to employment at PNC. Davenport had committed such an act when she pled nolo contendere and received probation before judgment for passing a bad check. PNC therefore had "cause" to terminate her under the Agreement.

Additionally, the Policy made coverage under PNC's fidelity bond a condition of continued employment "regardless of job title or classification." Once PNC had "become[] aware" of Davenport's criminal history, she "bec[a]me ineligible to perform work for PNC." Thus, in determining that Davenport's act of fraud and dishonesty was cause for termination, PNC applied a "standard[] applicable generally to conduct of similarly situated employees." To have tried to cover Davenport under the fidelity bond despite her criminal history would have

required PNC to treat her differently from similarly situated employees.

Because Davenport's act of "fraud" and "dishonesty" met the Agreement's definition for cause, we needn't decide if Southwest Gas Corp. v. Vargas, 901 P.2d 693 (Nev. 1995), applies only to implied contracts. Cf. Kern v. Palmer Coll. of Chiropractic, 757 N.W.2d 651, 659–60 & n.6 (Iowa 2008). Nor do we need to admit parol evidence as to the parties' intentions. See Dissent at 2; Canfield v. Gill, 697 P.2d 476, 477 n.1 (Nev. 1985).

**AFFIRMED.**

Davenport v. Albridge Solutions, Inc., No. 10-15554

Hawkins, Senior Circuit Judge, dissenting:

I dissent because the Retention Incentive Agreement (the "Agreement") is ambiguous. The Agreement's definition of "cause" is susceptible to more than one reasonable interpretation, as it is unclear whether "fraud, misappropriation, breach of fiduciary duty, felony, theft, dishonesty, or moral turpitude" refers to only *prospective* misconduct by the employee. *See Dell Computer Corp. v. Rodriguez*, 390 F.3d 377, 389 (5th Cir. 2004). Relying upon a bonding requirement contained in an Employee Manual that was neither incorporated by reference in the Agreement nor reviewed by Karyn Davenport prior to executing the Agreement (available only on the company's intraweb and acknowledged by her three weeks *after* signing the Agreement), the majority excuses Albridge Solutions from the normal rule that an ambiguous term is construed against the drafter. *Anvui, LLC v. G.L. Dragon, LLC*, 163 P.3d 405, 407 (Nev. 2007).

According to Davenport's declaration, the bonding requirement was never even discussed with her in connection with signing the Agreement. Not being bondable is not listed as "cause" for termination in the Agreement, and yet the company acknowledges this was the only reason it had for firing Davenport (despite never actually checking with the bonding company to see if Davenport could, in fact, be

bonded despite a single, sixteen-year-old bad check conviction[1]).  No rule of contract interpretation permits such a slight of hand.

I would reverse the district court and direct Albridge Solutions to pay Ms. Davenport the retention bonus she has otherwise earned.  At a minimum, there is a sufficient factual question concerning the parties' intentions to preclude summary judgment.  *See Margrave v. Packard Min., Inc.*, 939 P.2d 1038, 1039 (Nev. 1997).

---

[1] The bonding requirement policy described in the employee manual actually refers to "passing bad checks" in the plural and that such acts "*may* terminate bond coverage," and is thus unclear as to whether a single incident would have actually rendered Davenport not bondable.