**SUN MEDICAL, INC., Appellant,**

v.

**Bruce OVERTON, Appellee.**

**No. 2–92–051–CV.**

Court of Appeals of Texas,
Fort Worth.

July 27, 1993.

Opinion Overruling Motion for
Rehearing Nov. 3, 1993.

Liddell, Sapp, Zivley, Hill & Laboon, L.L.P., Bryan R. Haynes, Dallas, for appellant.

Bishop, Payne, Williams & Werley, L.L.P., Thomas J. Williams, Fort Worth, for appellee.

Before HILL, C.J., and FARRIS and WEAVER, JJ.

## OPINION

HILL, Chief Justice.

Sun Medical, Inc. appeals from a judgment recovered by Bruce Overton, a former employee of Sun Medical, following a jury trial on Overton's claim that Sun Medical had breached a written employment agreement. In various ways, Sun Medical claims in three points of error that the judgment is barred by the four-year statute of limitations, TEX. CIV.PRAC. & REM.CODE ANN. § 16.004 (Vernon 1986). Overton urges, in two cross-points of error, that the trial court erred by limiting his damages to those that accrued after May 1984, because the statute of limitations did not bar any of his claim, and that the trial court erred in denying his motion to disregard the jury's answer to question number seven because it is not material to the verdict.

We reverse and render judgment that Overton take nothing in his suit because we agree with Sun Medical's contention that the undisputed evidence established that Overton's claim against it is barred as a matter of law by the statute of limitations. Consequently, we also hold that the trial court did not err in failing to award Overton damages accruing before May 1984, and that any error of the trial court in failing to disregard jury question number seven is not an error that would have amounted to such a denial of Overton's rights as was reasonably calculated to cause or that probably did cause the rendition of an improper judgment in this cause.

Sun Medical asserts in points of error numbers one, two, and three that the trial court erred: (1) in granting Overton's motion for judgment n.o.v., in denying its motion for judgment on the verdict, and in rendering judgment for Overton because Overton's cause of action is barred as a matter of law by the statute of limitations; (2) in denying its motion for directed verdict because the evidence establishes that Overton's cause of action is barred as a matter of law by the statute of limitations; and (3) in granting Overton's motion to disregard the jury's answer to question eight because the question is material to the verdict.

Overton contends in two cross-points of error that the trial court erred in limiting his recovery to damages that accrued to him after May 1984 because the statute of limitations did not bar any of his claim, and that the trial court erred in denying his motion to disregard the jury's answer to question number seven.

Under the employment agreement between Sun Medical and Overton, Overton was assigned a "Territory" into which he sold medical-related products for Sun Medical. His territory consisted of both a geographic region as well as certain product lines. His territory originally included Oklahoma and all of Sun Medical's product lines.

The employment agreement provided that Sun Medical could change Overton's "Territory" on written notice to him thirty days prior to the effective date of the change. In June 1982, Sun Medical changed Overton's "Territory" so he was no longer allowed or paid to sell intravenous products in Oklahoma. The parties disputed whether Sun Medical provided Overton with written notice of the change in his territory, as required by the employment agreement. The jury found that Sun Medical breached its agreement with Overton.

Overton continued to work for Sun Medical until May 1986, at which time he was terminated. He did not continue to make sales in his old territory, only in his new territory. In 1988, after Sun Medical sued him, for reasons not pertinent here, Overton counterclaimed, seeking to recover his commission for all product sales made by others in the State of Oklahoma during the time he was employed by Sun Medical.

■ The parties agree that Overton's action is barred if brought more than four years from the date his cause of action accrued. TEX.CIV.PRAC. & REM.CODE ANN. § 16.004. The issue, then, is when Overton's cause of action accrued.

Overton filed his counterclaim on May 4, 1988. The trial court awarded Overton the amount found by the jury to have been losses resulting to Overton due to Sun Medical's breach of contract subsequent to May 1984, but denied recovery to him for losses resulting from Sun Medical's breach of contract prior to May 1984.

Sun Medical argues that as a matter of law Overton's action for breach of contract accrued in June 1982, at the time Overton learned that Sun Medical would not be paying him the disputed commissions. Sun Medical, therefore, contends that all of Overton's claim is barred by the statute. Overton claims that because the employment agreement contemplated continuing performance on his part, the cause of action did not accrue until Overton was terminated on May 12, 1986; therefore, he argues, all of his claim was timely filed.

■ The cause of action for the breach of an employment contract arises immediately upon the breach of the contract and limitations run from that time. *Dixie Glass Co. v. Pollak,* 341 S.W.2d 530, 540 (Tex.Civ.App.— Houston 1960), *writ ref'd n.r.e. per curiam,* 162 Tex. 440, 347 S.W.2d 596 (1961). Consequently, we hold that Overton's claim is barred by limitations because it was brought more than four years after it accrued.

■ Overton argues that limitations did not begin to run until the conclusion of his services under the contract because his contract provides for continuing performance by him. He relies in part upon the cases of *Intermedics, Inc. v. Grady,* 683 S.W.2d 842, 845 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) and *City and County of Dallas Levee Imp. Dist. v. Halsey,* 202 S.W.2d 957, 960–61 (Tex.Civ.App.—Amarillo 1947, no writ).

We find both cases to be distinguishable. In *Intermedics, Inc.,* Dr. Frank Grady brought an action against Intermedics, Inc. to recover the value of certain shares of the company's stock that had been promised him in an oral employment contract.

Grady did certain work for the company. In return, he was to be paid a salary and stock. He never received the stock. When he inquired, he was told that he need not worry, his stock would be forthcoming at a time more convenient to the corporation. When Albert Beutel, the company officer and board member who had hired Grady, died, Grady demanded the transfer of the stock.

Instead of transferring the stock to Grady, the company terminated his employment contract.

The court held that limitations did not begin to run until March 1979, when, upon Beutel's death, Grady demanded the stock from Intermedics. *Intermedics, Inc.,* 683 S.W.2d at 846. The court further held that until Beutel's death there was not such a distinct and unequivocal refusal by the corporation to effect the transfer that would have given Grady the right to sue. *Id.* at 847. In effect, then, the court held that there was no real breach of the employment contract until Beutel's death.

In this case the alteration of Overton's territory and therefore his compensation without proper notice to him was unequivocal, so that the breach of contract occurred in June 1982. Therefore, Overton's claim accrued at that time.

In *Halsey,* 202 S.W.2d at 957, Halsey, Stuart and Company, a corporation, sued the district and its board of supervisors for its fees arising out of a contract in which Halsey served as the district's exchange agent in connection with the exchange of certain bonds. Under the contract, Halsey was to receive a per cent of each bond, upon the rendering of statements at certain intervals. The statements were never rendered. Halsey performed its services under the contract from 1938 until August 1945, when the district filed for bankruptcy.

The court held that the contract between Halsey and the district provided that Halsey would be paid its fees upon the consummation of the refunding plan, and since it had partially consummated the plan and was ready, willing, and able to complete it but for the fact that its services were terminated by the bankruptcy filing, the exchange fees did not become due until August 1945, the date the district filed for bankruptcy. *Id.*

In this case, unlike *Halsey,* Sun Medical breached the contract well before the termination of Overton. Consequently, as we have previously noted, limitations began to run at the time of the breach of the contract.

Overton states that while Sun Medical may have breached the contract in June 1982 he could not have sued at that time since no one sold any products in his territory during that month. Be that as it may, the undisputed testimony established that sales for which Overton was claiming the right of compensation were made in the year 1982, beginning in July, and consequently Overton did have an opportunity to bring suit during that year. If Overton's claim accrued any time during the year 1982, regardless of the month, his claim is barred by limitations.

■ Overton urges that under the testimony Sun Medical changed the territory in June 1982, but that Sun Medical failed to obtain jury findings as to when his cause of action accrued. As we have previously noted, Overton's cause of action accrued when Sun Medical breached its contract or at least no later than when Overton was damaged by Sun Medical's breach. Under the undisputed facts, that occurred in June 1982, when Sun Medical changed Overton's territory without written notice to him, or, at the latest, in July or some subsequent month in 1982, when the company compensated others, but not Overton, for sales made in Oklahoma, Overton's original territory. Because the facts as to when the cause of action accrued were undisputed, it was not necessary to obtain jury findings as to that fact. *See Sullivan v. Barnett,* 471 S.W.2d 39, 44 (Tex.1971).

■ Overton insists that he had the option of treating the repudiation as inoperative, awaiting the time when the agreement is to be executed and, after nonperformance under the agreement, hold the repudiator responsible for all consequences of nonperformance. He relies on the case of *Lufkin Nursing Home, Inc. v. Colonial Invest. Corp.,* 491 S.W.2d 459, 463 (Tex.Civ.App.—Amarillo 1973, no writ).

*Lufkin* holds that where the maker of a note discontinues payment on an installment note, the holder of the note may wait until the note matures and then bring suit as to those installment payments that are within the statute of limitations period, because it has the right to treat the maker's repudiation as inoperative, await the time when the agreement is to be executed and, after nonperformance under the agreement, hold the

repudiator responsible for all consequences of such nonperformance.

The undisputed evidence in this case shows that Overton did not or could not treat the repudiation as inoperative because he did not continue to sell products within his old territory, only within the new territory. We hold that the rule stated in *Lufkin* is inapplicable where, as here, the nonrepudiating party does not or cannot treat the repudiation as inoperative. We sustain points of error numbers one, two, and three.

Overton argues in cross-points of error numbers one and two that the trial court erred in limiting his damages to those that accrued after May 1984 and by denying his motion to disregard the jury's answer to jury question number seven.

Jury question seven inquired as to whether Overton was aware before May 3, 1984, of any facts, conditions, or circumstances that would have excited inquiry in the mind of a reasonably prudent person that, if pursued with reasonable diligence, would have led to the discovery that Sun Medical would no longer pay commissions owed to him, if any, for sales of intravenous products made in Oklahoma after June 1982. The jury answered "Yes."

In view of our holding with respect to Sun Medical's points of error, it follows that the trial court did not err by limiting Overton's damages. Given our holding that the evidence established as a matter of law that Overton's claims are barred by the statute of limitations, if the trial court committed any error in denying Overton's motion to disregard the jury's answer to jury question seven, it was not such an error as was reasonably calculated to cause or that probably did cause the rendition of an improper judgment in this cause. We overrule Overton's cross-points of error numbers one and two.

We reverse and render judgment that Overton take nothing by his suit, with costs of court charged to him.

## OPINION ON REHEARING

Bruce Overton presents his motion for rehearing, urging that we erred in reversing and rendering judgment that he take nothing in his suit against Sun Medical, Inc.

In our original opinion we held that Overton could not rely on the doctrine that a nonrepudiating party may treat the repudiation of a contract as inoperative where that nonrepudiating party did not or could not treat the repudiation as inoperative. We held that Overton did not have that option here because he did not continue to sell the product in his original territory whereas others did.

On rehearing, Overton urges that he did have the option to treat Sun Medical's repudiation as inoperative because under his contract he was entitled to commissions for product sold in his original territory regardless of who might sell that product.

■ It is correct that the contract provides that Overton is to receive a commission on the gross profit per invoice of sales made within his territory, Oklahoma. However, as noted by Overton in his testimony, at the time the contract was made no one else but he was making any sales in Oklahoma. Therefore, we conclude that the only reasonable interpretation of the contract was that Overton was only to be paid commissions for sales that he, and not others, made within his territory.

Overton relies on the cases of *Townewest Homeowners Ass'n, Inc. v. Warner Communication, Inc.*, 826 S.W.2d 638 (Tex.App.—Houston [14th Dist.] 1992, no writ), *Intermedics, Inc. v. Grady*, 683 S.W.2d 842 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.), *Hart v. International Tel. & Tel. Corp.*, 546 S.W.2d 660 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.), and others in support of his theory that when a contract calls for periodic payments, a new cause of action arises, and the statute of limitations begins to run anew each time a party breaches the contract by failing to make required payments.

We have previously distinguished the case of *Intermedics, Inc.* We also find *Townewest* and *Hart* distinguishable. In *Townewest*, the cable company just announced that it was going to quit paying quarterly payments it had agreed to pay to the homeowners associ-

ation in exchange for the association allowing it to install cable TV. *Townewest*, 826 S.W.2d at 639. Because in that case the association had already performed its obligations under the contract, it was in a position to treat the cable company's repudiation as inoperative. *Id.* at 640. In such a case, as we noted in our original opinion, limitations did not begin to run until each installment became due. *See id.*

Overton urges that *Hart* is exactly on point with this case. *Hart*, however, unlike this case, involved a commission salesperson who made sales but did not receive the quarterly commission she was due under her contract. *See Hart*, 546 S.W.2d at 661. There was no repudiation of the contract by her employer, it just did not pay her the commissions due. Consequently, since she continued to perform the work for which she was due the commissions, she also, unlike Overton, was able to treat the contract as continuing in effect so that limitations did not run until each became due. *See id.* at 662.

We have examined each of the many cases cited by Overton on this point and do not find any to be inconsistent with our holding in the original opinion.

We therefore overrule Overton's motion for rehearing.