11th Court of Appeals

 Eastland, Texas

            Opinion

 

Walter J. Slusser

Appellant

Vs.       No. 11-01-00041-CV B Appeal from Dallas County

Union Bankers Insurance
Company

Appellee

 

In
December 1999, Walter J. Slusser sued Union Bankers Insurance Company (UBI),
his former employer, to recover insurance renewal commissions that Slusser
claimed he earned from 1987 through 1994. 
Although UBI paid him commissions during the period, Slusser claims that
UBI paid him lower commissions than were owed. 
In his sole issue, Slusser contends that the trial court erred in
granting summary judgment for UBI on the ground that his action is barred by
limitations.  We affirm.

Standard
of Review

A trial
court must grant a traditional motion for summary judgment if the moving party
establishes that no genuine issue of material fact exists and that he is
entitled to judgment as a matter of law. 
TEX.R.CIV.P. 166a(c); Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471
(Tex.1991).  A trial  court properly grants summary judgment for a
defendant if he establishes all the elements of an affirmative defense.  American Tobacco Company, Inc. v. Grinnell,
951 S.W.2d 420, 425 (Tex.1997).  Once
the movant establishes his right to a summary judgment, the non-movant must
come forward with evidence or law that precludes summary judgment.  City of Houston v. Clear Creek Basin
Authority, 589 S.W.2d 671, 678-79 (Tex.1979). 
When reviewing a summary judgment, the appellate court takes as true
evidence favorable to the non-movant and indulges every reasonable inference
and resolves any doubts in favor of the non-movant.  American Tobacco Company, Inc. v. Grinnell, supra; Nixon v. Mr.
Property Management Company, Inc., 690 S.W.2d 546, 548-49 (Tex.1985).








Background
Facts

Prior to
his retirement in April 1999, Slusser was a field vice president and regional
director of sales for UBI.  As a field
vice president, Slusser had the responsibility to appoint suitable general
agents to represent UBI in his region. 
His written employment contract set forth the commission rates that he
would receive based on business generated by the general agents.  Slusser claims that, from 1987 until 1994,
UBI computed his insurance renewal commissions incorrectly and paid him less
commissions than were due.  Slusser=s compensation was changed after 1994, and he
does not claim any amounts for the period from 1994 until he retired.

In 1992, a
former field vice president of UBI told Slusser that he had information that
UBI might have underpaid commissions to the field vice presidents for several
years.  He advised Slusser to look into
the matter.  In late 1992, Slusser asked
George Kardell, the vice president of marketing operations, to investigate
whether the correct amount of commissions were paid.  Kardell promised Slusser that UBI would check into the claim.

Kardell
directed Slusser=s inquiry to another vice president, Leo
Arsen, who was in charge of the commission accounting function.  Kardell testified that he pursued the matter
on behalf of Slusser and the other field vice presidents in 1993 and 1994.  After a considerable period of time had
elapsed, Arsen advised Kardell that Kardell would have to go to Don Rutherford,
the senior vice president of marketing, for an answer because the senior
officers of UBI had instructed Arsen not to get involved in compensation issues
for field vice presidents.  In late
1995, UBI=s general counsel, Dan Gail, advised Kardell
that UBI=s outside law firm had determined that UBI
owed nothing further on the past commissions and that, in any event, the field
vice presidents= claims were barred by limitations.  Kardell requested that Gail put his position
in writing.  Gail addressed a memorandum
dated January 11, 1996, to Rutherford in which Gail noted that Kardell and some
of the field vice presidents were threatening to sue, that their suits were
baseless, and that their claims were barred by limitations.  Kardell 
gave a copy of the Gail memorandum to Slusser a few days later.








Slusser
testified by affidavit that he and Kardell believed that Gail=s conclusion concerning the calculation of
commissions for field vice presidents was wrong because it was based on a
misreading of a 1985 change in the payment of insurance commissions to general
agents.  According to Slusser, Gail was
not with UBI when the commission arrangements were changed for the general
agents; therefore, Gail did not know that the change did not affect the field
vice presidents.  After the Gail
memorandum was written, Slusser and Kardell pressed their claims with Glen
Gettier, who had become president of UBI after new owners purchased UBI in
December 1995.  Gettier called a meeting
in March 1996 with the field vice presidents. 
Gettier said that he would look into the matter, and he Arenewed the promises that UBI would pay the
Field Vice-Presidents whatever it owed.@  It appears that nothing
further was done by either side until Slusser filed this lawsuit on December
30, 1999.

In its
motion for summary judgment, UBI asserted that Slusser=s lawsuit was barred by limitations because
it was filed more than four years after the last commission payment was due in
1994.  In his response to UBI=s motion for summary judgment, Slusser
claimed that his causes of action did not accrue prior to January 11, 1996, the
date of the Gail memorandum; therefore, his breach of contract claim was filed
within the four-year limitations period for actions in debt, TEX. CIV. PRAC.
& REM. CODE ANN. '
16.004 (Vernon Supp. 2002), and his fraud, fraudulent concealment, and breach
of fiduciary duty claims were filed within the four-year limitations period set
forth in TEX. CIV. PRAC. & REM. CODE ANN. ' 16.051 (Vernon 1997).  

Limitations








Sections
16.004 and 16.051 provide that a cause of action must be brought within four
years beginning Aafter the day the cause of action accrues.@   A
cause of action generally accrues when the wrongful act effects an injury,
regardless of when the plaintiff learned of the injury.  Moreno v. Sterling Drug, Inc., 787 S.W.2d
348, 351 (Tex.1990).  Accrual of a cause
of action is deferred in two types of cases: (1) those involving fraud or
fraudulent concealment and (2) those where the injury is Ainherently undiscoverable@ and is Aobjectively verifiable.@  S.V. v. R.V., 933 S.W.2d 1, 6
(Tex.1996); Computer Associates International, Inc. v. Altai, Inc., 918 S.W.2d 453,
456 (Tex.1996).  In S.V. v. R.V., supra
at 4, the Texas Supreme Court noted that, strictly speaking, the second type of
cases are properly referred to as discovery rule cases; later, however, the
court referred to both types of cases as discovery rule cases.  Murphy v. Campbell, 964 S.W.2d 265, 270
(Tex.1997).  Because Slusser=s pleadings and arguments include the
discovery rule, fraud, fraudulent concealment, and breach of fiduciary duty,
our analysis will be in terms of the two types of cases. 

To avoid
relying on the discovery rule, Slusser argues that his contract claim did not
accrue until the Gail memorandum was issued in January 1996 because that was
when his claim for additional commissions was refused.  We disagree.  A cause of action for breach of contract is generally regarded as
accruing when the contract is breached or when the claimant has notice of facts
sufficient to place him on notice of the breach.  Rose v. Baker & Botts, 816 S.W.2d 805, 810 (Tex.App. B Houston [1st Dist.] 1991, writ den=d). 
Where the terms of an agreement call for fixed, periodic payments, a
separate cause of action arises for each missing payment.  F.D. Stella Products Co. v. Scott, 875 S.W.2d
462 (Tex.App. B Austin 1994, no writ). 

Slusser
cites Intermedics, Inc. v. Grady, 683 S.W.2d 842, 845 (Tex.App. B Houston [1st Dist.] 1984, writ ref=d n.r.e.), for the proposition that a cause
of action for the breach of a promise to pay arises when a demand for payment
has been made and refused.  Intermedics
involved an oral contract for employment where there was no agreement as to
when the promised company stock would be issued to the plaintiff.  Slusser had a written contract, and he was
paid commissions when the insureds paid their premiums.  Slusser admits that the payments to him were
made; he simply claims that the wrong amounts were paid.  No demand for payment was required for his
claims for additional payment to accrue. 
See Sun Medical, Inc. v. Overton, 864 S.W.2d 558 (Tex.App. B Fort Worth 1993, writ den=d). 
Slusser=s claims for additional payment accrued each
time UBI paid a commission payment.  See
Townewest Homeowners v. Warner Communication, Inc., 826 S.W.2d 638 (Tex.App. B Houston [14th Dist.] 1992, no writ).  Even if demands for payment were required,
such demands must be made within a reasonable time.  Irwin v. Prestressed Structures, Inc., 471 S.W.2d 865, 867-68
(Tex.Civ.App. B Eastland 1971, writ ref=d n.r.e.).

The
Discovery Rule








Alternatively,
Slusser argues that the discovery rule tolled limitations on his breach of
contract claim until the Gail memorandum was issued in January 1996.  Slusser=s argument is that he could not Adiscover@ whether the wrong amounts were being paid
because UBI=s accounting department had the information
required to make the correct calculations and that the Gail memorandum was the
first indication that the wrong amounts had been paid.  

The
discovery rule is an exception to the general rule of claim accrual.  The judicially-created discovery rule
requires that the nature of the injury must be inherently undiscoverable and
that the injury must be objectively verifiable.  HECI Exploration Company v. Neel, 982 S.W.2d 881, 886 (Tex.1998).


The Texas
Supreme Court in Wagner & Brown, Ltd. v. Horwood, 58 S.W.3d 732 (Tex.2001),
held that an underpayment of royalties was not inherently undiscoverable
despite the royalty owners= argument that the lessee was the sole source of information.  In Computer Associates International, Inc.
v. Altai, Inc., supra, the court held that the misappropriation of trade
secrets by a former employee was not inherently undiscoverable despite the fact
that the employee was utilizing those trade secrets while working for a
competitor of the plaintiff.  Expecting
Slusser, a vice president, to discover improper commission payments within his
own company is less onerous than expecting royalty owners to discover whether
their royalty payments are correct or expecting software companies to detect
the theft of trade secrets being used by competitors.  Slusser=s
claim for additional commissions was not inherently undiscoverable.

Slusser
also argues that the discovery rule applies to his breach of fiduciary duty
claim.  The supreme court categorized
fiduciary duty cases under the discovery rule, but the court held that the
injuries from a breach of fiduciary duty are presumed to be inherently
undiscoverable.  Computer Associates
International, Inc. v. Altai, Inc., supra at 456; see Little v. Smith, 943
S.W.2d 414, 425 (Tex.1997)(Enoch, J., concurring).  Because of this presumption, breach of fiduciary duty cases are
treated like fraud cases in terms of deferral of the cause of action; the issue
is when the plaintiff knew or should have known, with the exercise of
reasonable diligence, of his or her injury. 
Computer Associates International, Inc. v. Altai, Inc., supra at
455-56.  We will assume, without
deciding, that UBI owed Slusser a fiduciary duty. 








Slusser
admits that a former UBI field vice president in 1992 put him on notice that
UBI might be underpaying the amount of commissions due to field vice
presidents. Using reasonable diligence, Slusser should have learned of any
underpayment of commissions within four years after the advice that Slusser
should look into the matter. 

Fraud
and Fraudulent Concealment

The Texas
Supreme Court has said that the commission of fraud or fraudulent concealment
works to estop a defendant from asserting limitations as a defense because Aa person cannot be permitted to avoid
liability for his actions by deceitfully concealing wrongdoing until
limitations has run.@  S.V. v. R.V., supra at 6; see Computer
Associates International, Inc. v. Altai, Inc., supra at 455-56; Nichols v.
Smith, 507 S.W.2d 518, 519 (Tex.1974). 
When the fraud is not known to the injured party, the limitation period
commences on the date the fraud is discovered or should have been discovered by
reasonable diligence.  Woods v. William
M. Mercer, Inc., 769 S.W.2d 515, 517 (Tex.1988).

Any fraud
or fraudulent concealment in connection with commission payments to Slusser
during the period 1987 through 1994 should have been discovered by reasonable
diligence beginning in 1992.  See
Computer Associates International, Inc. v. Altai, Inc., supra at 455-56.  Slusser argues, however, that UBI=s fraud also encompassed false statements
that UBI would investigate the matter and pay Slusser any amounts owed and that
he relied on those statements to delay filing his lawsuit.              The
elements of common-law fraud are: (1) a material representation that was false;
(2) the party making the representation knew it was false or made it recklessly
as a positive assertion without any knowledge of its truth; (3) the party
making the representation made it with the intention to induce the other party
to act upon the representation; and (4) 
the party to whom the representation was made actually and justifiably
relied upon the representation and thereby suffered injury.  Ernst & Young v. Pacific Mutual Life
Insurance Company, 51 S.W.3d 573, 577 (Tex.2001).   








The
statements to the effect that UBI would look into the matter were, at most,
promises of future performance.  A
promise of future performance constitutes an actionable misrepresentation only
if the promise is made with no intention of performing it at the time it was
made.  Formosa Plastics Corporation USA
v. Presidio Engineers and Contractors, Inc., 960 S.W.2d 41, 47-48
(Tex.1998).  Slusser has not shown that,
at the time the UBI officers said that they would look into the matter, their
statements were false.  The Gail
memorandum is evidence that UBI investigated the matter; Slusser simply
believed that Gail did not know the facts and reached the wrong conclusion.

Slusser
also failed to show that his reliance on UBI=s statements that the company would look into the matter was
justifiable.  Although his reliance on
the statements may have been reasonable in 1992 and 1993, Slusser=s continued reliance was not
justifiable.  We overrule appellant=s sole issue on appeal.  

This
Court=s Ruling  

We affirm
the summary judgment ruling of the trial court.

 

TERRY
McCALL

JUSTICE

 

February 21, 2002

Publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Arnot, C.J., and

McCall, J., and McCloud, S.J.[1]

 











[1]Austin McCloud, Retired Chief Justice, Court of
Appeals, 11th District of Texas at Eastland sitting by assignment.