Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-09-00474-CV

Rosemary **SPRING**,
Appellant

v.

**WALTHALL, SACHSE & PIPES**, **INC.,**
Appellee

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 05-CI-03089
Honorable Karen Pozza, Judge Presiding[1]

Opinion by:    Steven C. Hilbig, Justice

Sitting:       Karen Angelini, Justice
               Sandee Bryan Marion, Justice
               Steven C. Hilbig, Justice

Delivered and Filed: May 26, 2010

AFFIRMED IN PART, REVERSED AND REMANDED IN PART

Rosemary Spring appeals the take nothing judgment on her claims for defamation, breach

of contract, Fair Labor Standards Act violations, sexual harassment, assault, constructive discharge,

wrongful injunction and attorney's fees. We reverse and remand in part.

---

[1] This appeal arises out of the order signed by Judge Berchelmann granting Walthall, Sachse & Pipes Inc.'s motions for summary judgment and the judgment entered by Judge Pozza denying Spring's claim for attorney's fees.

**BACKGROUND**

Spring was an employee of Walthall, Sachse & Pipes, Inc. ("WSP"), an insurance agency, until February 2005, when she resigned to open her own insurance agency. Shortly after Spring's resignation, WSP filed suit against Spring for breach of the non-compete and non-piracy provisions in their employment agreement, theft of trade secrets, breach of fiduciary duty, unfair competition by misappropriation and use, forfeiture of compensation, and injunctive relief. Spring counterclaimed for defamation, breach of contract, Fair Labor Standards Act ("FLSA") violations, sexual harassment, assault, constructive discharge, wrongful injunction, and attorney's fees.

WSP filed three motions for summary judgment on Spring's counterclaims. The trial court granted summary judgment against Spring on all her counterclaims except the attorney's fees claim. WSP tried its claims against Spring to a jury and lost. At the end of trial, Spring presented her counterclaim for the attorney's fees she incurred in defending against WSP's action to enforce the covenant not to compete. The trial court denied Spring's request and rendered a take nothing judgment against all parties. Only Spring appealed.

**STANDARD OF REVIEW**

A traditional summary judgment requires the movant to establish that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Co. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). The movant has the burden to conclusively disprove one element of the challenged cause of action or to conclusively prove all of the elements of an affirmative defense. *Little v. Tex. Dep't of Crim. Justice*, 148 S.W.3d 374, 381 (Tex. 2004); *Pustejovsky v. Rapid-American Corp.*, 35 S.W.3d 643, 645-46 (Tex. 2000). Evidence favorable to the non-movant will be taken as true, and every reasonable

inference and any doubts will be resolved in the non-movant's favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 814 (Tex. 2005).

When filing a no-evidence motion for summary judgment, the movant must specifically challenge the evidentiary support for an element of a claim or defense. TEX. R. CIV. P. 166a(i) cmt. (1997). The movant is entitled to summary judgment if it can prove, as a matter of law, that the opponent failed to produce legally sufficient evidence to support its theory of liability or defense after adequate time for discovery. TEX. R. CIV. P. 166a(i). Once the movant files a no-evidence motion for summary judgment, the respondent has the burden to produce summary judgment evidence raising a genuine issue of material fact on the challenged element. *Id.*; *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). However, the non-movant is not required to marshal its proof; he need only present some evidence of probative value raising a fact issue about which reasonable minds could differ. TEX. R. CIV. P. 166a(i) cmt. (1997); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002). We view the evidence in the light most favorable to the non-movant and disregard all contrary evidence and inferences. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003).

## DISCUSSION

### DEFAMATION

Spring contends she was defamed by WSP when one of its employees told third parties she had stolen and destroyed customer information and files prior to her resignation. WSP asserted four grounds for summary judgment on Spring's defamation claim: (1) the statements were protected by

a qualified privilege; (2) there is no evidence that Spring "did not engage in the wrongdoing that she contends was the basis of the alleged defamatory statements;" (3) there is no evidence that WSP made false or defamatory statements regarding Spring to third parties; and, (4) there is no evidence Spring was harmed by the alleged statements.

In response to WSP's motion for summary judgment, Spring filed the affidavit of Jerri Rhodes, who worked for Family Faith Academy and was responsible for coordinating and purchasing its insurance. Spring was the agent on the Family Faith Academy account while employed at WSP. Jerri stated in her affidavit that Debbie Brezezinski, a WSP employee, told her during a telephone conversation that Spring had stolen and destroyed several of WSP's hard copy and computer files. Jerri attested that Debbie told her WSP had to call all of its customers to obtain information to reconstruct its files because of Spring's actions. Jerri also stated that she understood this to mean that WSP was accusing Spring of stealing and destroying WSP's customer information.

For a private individual to sustain a defamation claim, the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with negligence regarding the truth of the statement. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). An employer has a qualified privilege for communications made in the course of an investigation following a report of employee wrongdoing. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). "The privilege remains intact as long as communications pass only to persons having an interest or duty in the matter to which the communications relate." *Id.* Whether a qualified privilege exists is a question of law. *Calhoun v. Chase Manhattan Bank (U.S.A.), N.A.*, 911 S.W.2d 403, 408 (Tex. App.—Houston [1st Dist.] 1995, no writ). Additionally, "to invoke the privilege on summary judgment, an employer must

conclusively establish that the allegedly defamatory statement was made with an absence of malice." *Randall's*, 891 S.W.2d at 646.

WSP argues the alleged defamatory statements were made in the course of an investigation, but did not present any evidence to support this contention. Without evidence to establish that there was an investigation, the purpose of the investigation, and that the information was given to parties with a corresponding duty or interest, WSP did not conclusively establish its qualified privilege. Moreover, WSP did not assert in the trial court or on appeal that the allegedly defamatory statements were made with the absence of malice. Accordingly, WSP was not entitled to summary judgment on the affirmative defense of qualified privilege. *See Randall's*, 891 S.W.2d at 646.

WSP also sought summary judgment on the ground there was no evidence to establish Spring did not engage in the wrongdoing that she contends was the basis of alleged defamatory statements. This contention is not a proper ground for summary judgment because Spring is a private individual, and the falsity of the statement is presumed. *See Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987). The substantial truth of a statement is an affirmative defense that must be proved by the defendant. *See Thomas-Smith v. Mackin*, 238 S.W.3d 503, 509 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Randall's*, 891 S.W.2d at 646. Spring does not have the burden to prove the alleged statements were false. *See Grotti v. Belo Corp.*, 188 S.W.3d 768, 774 (Tex. App.—Fort Worth 2006, pet. denied). Because WSP did not establish the statements were substantially true, Spring did not have the burden to raise a fact issue on the falsity of the allegedly defamatory statements. Summary judgment was not proper on this ground.

WSP also asserted there is no evidence that WSP made false or defamatory statements regarding Spring to third parties or that Spring was harmed by the statements. The affidavit of Jerri Rhodes clearly raises a fact issue on whether defamatory statements were made. Additionally, Spring's deposition testimony that she did not receive business from one company because of the alleged statements raises a fact issue on whether Spring was harmed.

WSP was not entitled to summary judgment on Spring's defamation claim.[2]

### BREACH OF CONTRACT

Spring alleged WSP breached their 1993 employment contract by failing to pay her the commissions due under the contract. WSP moved for summary judgment, asserting Spring's claims for breach of contract were barred by limitations because Spring filed her counterclaim on March 24, 2005, and the claims accrued in January 2000, when the employment agreement was modified. In response, Spring contends her claims accrued at each pay period when she was not paid commissions in accordance with the terms of the 1993 employment agreement. She also argued the breach of contract claim is permitted under the relation-back doctrine because it arises from the "same transaction" as WSP's claims against her.[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.068 (Vernon 2008).

---

[2] WSP also argues on appeal that the defamation claim is barred by limitations; however, limitations was not raised in any of WSP's motions for summary judgment. Therefore, summary judgment can not be sustained on this ground.

[3] Relation-back is a doctrine by which an earlier-filed pleading tolls the statute of limitations for claims asserted in later amended pleadings, as long as the amendments are not based on new, distinct, or different transactions or occurrences. TEX. CIV. PRAC. & REM. CODE ANN. § 16.068 (Vernon 2008); *see Lovato v. Austin Nursing Ctr., Inc.*, 113 S.W.3d 45, 55 (Tex. App.—Austin 2003)(relation-back doctrine originated as equitable remedy to effectuate justice), *aff'd*, 171 S.W.3d 845 (Tex. 2005).

A four-year statute of limitations applies to contract actions. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004 (Vernon 2002). A cause of action for breach of contract generally accrues at the time of breach or when the claimant has notice of facts sufficient to place him on notice of the breach. *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002); *Davis Apparel v. Gale-Sobel, a Div. of Angelica Corp.*, 117 S.W.3d 15, 18 (Tex. App.—Eastland 2003, no pet.). A party breaches a contract when he or she fails to perform a duty or violates an obligation required by the contract. *Hoover v. Gregory*, 835 S.W.2d 668, 677 (Tex. App.—Dallas 1992, writ denied). When the breach relates to payment under a contract that calls for fixed, periodic payments, a separate cause of action accrues for each missed payment. *Davis Apparel*, 117 S.W.3d at 18; *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.)("[I]f the terms of an agreement call for periodic payments during the course of the contract, a cause of action for such payments may arise at the end of each period, before the contract is completed"). A claim is time barred if the payment was more than four years overdue when suit is filed. *Spin Doctor Golf, Inc. v. Paymentech, L.P.*, 296 S.W.3d 354, 362 (Tex. App.—Dallas 2009, pet. denied)*; Hollander v. Capon*, 853 S.W.2d 723, 726-27 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

Spring was considered an independent contractor of WSP until 1993, when WSP and Spring entered into a written employment agreement. The employment agreement included, among other things, a non-competition agreement, a non-piracy covenant, and an agreement to compensate Spring on a commission basis according to a schedule attached to the agreement. WSP altered Spring's commission schedule numerous times during her tenure, which Spring concedes was allowed under the agreement. In 1999, WSP decided to change the manner in which commissions would be calculated and provided Spring with a document referred to as "Rosemary Compensation" that had

an effective date of January 1, 2000. Spring contends the change to the calculation of commissions provided for "commission splitting," and this change breached the 1993 agreement. WSP and Spring's original contract provided in pertinent part as follows: "The Agency will pay the Employee compensation on sales in accordance with the Schedule as set forth in Exhibit A attached and made a part hereof." The Schedule of Compensation in Exhibit A to the 1993 agreement provided:

> The Agency will pay the Employee -40%- of first year commissions generated by the Employee and paid to the Agency. Thereafter, the Agency will pay the Employee -20%- of renewal commissions on personal lines but zero commission on personal lines auto business.

The 1999 memorandum provided:

> Starting from the date January 1, 2000 all commissions on newly acquired business can be negotiated with the producers based upon an agreed upon percentage not to exceed 60%, and, in all cases, the arrangement is subject to owner approval. This arrangement can be negotiated with management OR Rosemary Spring, subject to owner approval. All prior commission arrangements among producers are not be [sic] changed, unless by owner approval.

WSP contends that Spring's claims accrued when the 1993 contract was modified by the "Rosemary Memorandum," which became effective on January 1, 2000. WSP relies on *Sun Medical v. Overton*, 864 S.W.2d 558 (Tex. App.—Fort Worth 1993, writ denied) to support its position that limitations began to run on the effective date of the contract modification and not on each date the actual commissions were paid. The breach of employment contract in *Sun Medical* related to a change in Overton's sales territory. *Id*. at 560. After Overton was terminated, he was sued by Sun Medical and he counterclaimed seeking recovery of the commission on sales made by other salesman in his old territory, claiming his contract was breached when his territory was changed. *Id*. Overton argued limitations did not begin to run until the conclusion of his services under the contract because

his contract provided for continuing performance. *Id*. However, the court determined the alteration of Overton's territory and therefore his compensation, without proper notice to him, was unequivocal, so that the breach of contract occurred when his territory was changed. *Id*. at 561. The holding in *Sun Medical* is inapplicable to this case because the modification of Spring's employment agreement affected how her commissions *could* be calculated and had no immediate or unequivocal effect until each commission was negotiated and paid.

Spring's employment agreement was a "continuing contract" with periodic payment of commissions, and limitations began for each allegedly deficient commission payment when the commission was paid. *See Slusser v. Union Bankers Ins. Co.*, 72 S.W.3d 713, 717 (Tex. App.—Eastland 2002, no pet.)(plaintiff's claims for additional commissions accrued each time he was paid); *Townewest Homeowners Ass'n, Inc. v. Warner Commc'n Inc*., 826 S.W.2d 638, 640 (Tex. App.—Houston [14th Dist.] 1992, no pet.)(court held when agreement calls for periodic payments during course of the contract, cause of action for such payments arises at end of each period before contract is complete.). Therefore, Spring's breach of contract claim is not barred by limitations for any alleged breach and corresponding damages for the four years preceding the date Spring filed her counterclaim. Summary judgment on Spring's breach of contract claim was improper.

## SEXUAL HARASSMENT

Spring pled a hostile-work-environment theory of gender discrimination based on sexual harassment under the Texas Labor Code and Title VII of the Civil Rights Act of 1964. Spring claims James Sachse, president of WSP, sexually harassed her on at least three occasions: once pushing her head into his hip and patting her head; a second time thrusting his buttocks into her pelvic area in a crowded elevator and grinding from side to side while laughing; and on another occasion when he

kissed her cheek and neck. WSP sought summary judgment on Spring's sexual harassment claim, asserting Spring failed to state a prima facie case of sexual harassment and the *Faragher/Ellerth* affirmative defense.[4] *See Faragher v. City of Boca Raton*, 524 U.S. 775, 780, 807-08, (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

A plaintiff asserting a hostile-work-environment sexual-harassment theory of job discrimination against her employer has the burden of establishing that: (1) she is a member of a protected class; (2) she was the victim of uninvited sexual harassment; (3) the harassment was based on sex; and (4) the harassment affected a "term, condition, or privilege" of her employment. *See Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). For conduct to be actionable, a plaintiff must show "the workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create a hostile or abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)(citations and internal quotation marks omitted). Sexual harassment is sufficiently "severe" or "pervasive" to alter the terms, conditions, or privileges of the victim's employment when it can be said to create an "abusive working environment." *See id.* at 24 (Scalia, J., concurring). The "abusiveness" standard is described by the Supreme Court as requiring "extreme" conduct, *Faragher*, 524 U.S. at 788 and "takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Harris*, 510 U.S. at 21.

---

[4] The *Faragher/Ellerth* affirmative defense bars the imposition of vicarious liability predicated on the actions of a supervisor if the employer proves: (1) the employer exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Faragher*, 524 U.S. at 802-08; *Ellerth*, 524 U.S. at 765.

The work environment must be both objectively and subjectively made hostile or abusive by the harassing conduct. *Faragher*, 524 U.S. at 787. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond [the statute's] purview." *Harris*, 510 U.S. at 211. In assessing the objective hostility or abusiveness of the harassment, the discriminatory conduct must be viewed from the perspective of a reasonable person in the plaintiff's position in the same circumstances. *Oncale v. Sundowner Offshore Servs, Inc.*, 523 U.S. 75, 81 (1998). The Supreme Court has instructed lower courts to apply objective abusiveness as a legal threshold to "filter out" complaints of alleged harassment that are not actionably severe or pervasive as a matter of law. *Faragher*, 524 U.S. at 787-88. The courts must consider the totality of the circumstances, which includes the frequency of the discriminatory conduct; its severity; whether the conduct was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the employee's work performance. *Id.; Harris*, 510 U.S. at 21. A hostile work environment claim is designed to address conduct that is so severe or pervasive that it destroys an employee's opportunity to succeed in the workplace. *Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871, 874 (5th Cir.), *cert. denied*, 528 U.S. 963 (1999).

The conduct described by Spring is similar to the type of conduct Texas courts have deemed insufficient to constitute actionable sexual harassment. For example, in *Staller v. Service Corp. Int'l*, No. 04-06-00212-CV, 2006 WL 3018039 (Tex. App.—San Antonio Oct. 25, 2006, no pet.) (mem. op.), the plaintiff alleged two of her supervisors made sexually inappropriate remarks to her such as "I'll bet you like it big," whenever she used the word "big" in conversation; commented to her about the size of her breasts; referred to male employees of the company as her "lover"; stood over her

when she sat at her desk and tried to look down her shirt; came toward her in a menacing fashion as if to grab her in a sexual manner; repeatedly indicated a desire to go out and have a drink with her; and forbade her from dating other employees. *Id.* at \*5. This court concluded the plaintiff failed to establish a hostile work environment claim and affirmed the granting of a summary judgment in favor of the defendant. *Id.*

Similarly, our sister court affirmed summary judgment in favor of the defendant on a hostile work environment claim in *Garcia v. Schwab*, 967 S.W.2d 883, 885 (Tex. App.—Corpus Christi 1998, no pet.). In *Garcia*, the plaintiff's allegations against her superior included the following: staring at and commenting on her breasts; touching his genitals; discussing highly personal and sexual matters with her; remarking on her appearance; staring at and commenting on a photograph of a female client; commenting on the appearance of other women; making repeated sexual references she felt were intended to arouse her; and insulting and yelling at her. *Id.* at 885. The court determined the plaintiff failed to raise a fact issue regarding whether the alleged conduct affected a term, condition, or privilege of her employment. *Id.* at 887.

The Fifth Circuit has also rejected hostile work environment claims based upon facts more egregious than those alleged by Spring. For example, in *Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871, 873 (5th Cir.), *cert. denied*, 528 U.S. 963 (1999), the plaintiff alleged her coworker stood in front of her desk and remarked "your elbows are the same color as your nipples." *Id.* at 872. The plaintiff also stated her coworker remarked "you have big thighs" while he simulated looking under her dress. *Id.* The alleged harasser allegedly stood over the plaintiff's desk on several occasions and tried to look down her clothing and "touched her arm on several occasions, rubbing one of his hands from her shoulder down to her wrist while standing beside her." *Id.* Finally, on two

occasions, after coming in late to an office meeting, the alleged harasser "patted his lap and remarked [to the plaintiff], 'here's your seat.'" *Id.* The court concluded these allegations did not establish an abusive work environment. *Id.* at 872.

Similarly, in *Hockman v. Westward Commc'ns, L.L.C.*, 407 F.3d 317 (5th Cir. 2004), the Fifth Circuit affirmed a summary judgment granted in favor of the defendant despite the existence of more severe allegations than those raised by Spring. In *Hockman*, the plaintiff claimed her immediate supervisor commented on her body and her behind, made comments to her about the body of other employees, slapped her behind with a newspaper, brushed up against her breasts and behind, attempted to kiss her, asked her to come in early so they could be alone together, and once stood in the doorway of the ladies' room to watch plaintiff wash her hands. *Id.* at 321-22, 328. The Fifth Circuit rejected the plaintiff's hostile work environment claim because it concluded the harassing behavior was not so severe or pervasive as to affect a term, condition, or privilege of her employment. *Id.* at 328-29.

We hold Spring was not subjected to such severe or pervasive sexual harassment that would create a hostile or abusive work environment as to affect a term, condition, or privilege of employment of a reasonable person in Spring's position. Although offensive, Sachse's conduct is insufficiently egregious or extreme to support an actionable sexual harassment claim. *See Hockman*, 407 F.3d at 328; *Shepherd*, 168 F.3d at 873; *Staller*, 2006 WL 3018039 at *1; *Garcia*, 967 S.W.2d at 887.

Summary judgment was proper on Spring's sexual harassment claim.[5]

---

[5][▲] Because we affirm WSP's summary judgment on the ground Sachse's conduct does not rise to the level of legally actionable sexual harassment, we do not address whether WSP established the *Faragher/Ellerth* affirmative defense. *Faragher*, 524 U.S. at 780, 807-08; *Ellerth*, 524 U.S. at 765.

## ASSAULT

Spring argues the conduct that supports her harassment claim is also actionable as civil assault. WSP moved for summary judgment on Spring's assault claim asserting Sachse was acting outside the scope of his authority at the time of the alleged assault and there is no evidence of the intent element of assault.

Conduct that is not actionable as discrimination under the Texas Labor Code and Title VII of the Civil Rights Act of 1964, may be actionable as civil assault. *See Twigland Fashions, Ltd. v. Miller*, No 03-07-00728, 2010 WL 850170, at*8 (Tex. App.—Austin Mar. 11, 2010, no pet. h.). The elements for civil assault mirror those required for criminal assault. *See Johnson v. Davis*, 178 S.W.3d 230, 240 (Tex. App.—Houston [14th Dist] 2005, pet. denied). In the context of Spring's allegations of assault, a person commits an assault if he intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. *See* TEX. PEN. CODE ANN. § 22.01(a)(3)(Vernon Supp. 2007); *see Umana v. Kroger Tex., L.P.*, 239 S.W.3d 434, 436 (Tex. App.—Dallas 2007, no pet.).

To impose liability on WSP for Sachse's alleged assault, Sachse's actions must either be imputed to WSP or Sachse's acts must be considered those of the company. *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997). Actions of a vice-principal of a corporation committed in the workplace may be deemed to be the acts of the corporation itself and are imputed to the corporation regardless of whether the vice-principal is acting within the scope of his employment when he commits an intentional tort. *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999)(vice-principal's acts supporting intentional infliction of emotional distress were corporations's acts). The summary judgment evidence establishes that Sachse is the president of

WSP, is an eighty-five percent owner of WSP, and was Spring's supervisor. This evidence raises a fact issue on whether Sachse is a vice principal and thus his actions can be imputed to WSP. *See id.*

As to the second ground for summary judgment, Spring relies on Sachse's conduct to raise a fact issue on intent. Intent to commit assault may be inferred from the actor's conduct. *Pineda v. City of Houston*,175 S.W.3d 276, 283 (Tex. App.—Houston [1st Dist.] 2004, no pet.)(citing Restatement (Second) of Torts § 8A (1965)(intent established when facts demonstrate actor desired to cause consequences of his act, or he believes consequences are substantially certain to result from it.); *see also Umana*, 239 S.W.3d at 436. Spring described the three incidents with Sachse and all involved physical touching (once pushing her head into his hip and patting it; a second time thrusting his buttocks into her pelvic area in a crowded elevator and grinding from side to side all the while laughing; and kissing Spring on her cheek and neck). Nina Carlile, Spring's co-employee, witnessed the elevator incident and testified in her deposition that he pushed up against Spring with his "rearend and rubbed it against her."

Based on Sachse's conduct, we hold reasonable minds could differ as to whether Sachse knew or should have reasonably believed that Spring would regard his alleged conduct as offensive or provocative. Summary judgment was improper on the assault claim.

## CONSTRUCTIVE DISCHARGE

Spring claims Sachse's harassment and WSP's failure to pay her commissions compelled her to resign from WSP. WSP contends there is no evidence that Sachse's alleged conduct was done with the intention of forcing Spring to quit. Alternatively, WSP asserts that a reasonable person in Spring's position would not have felt compelled to resign.

Constructive discharge requires a greater degree of harassment than that required to prove a hostile environment claim. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir.), *cert. denied*, 534 U.S. 817 (2001); *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998), *cert. denied*, 526 U.S. 1065 (1999). Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge. *Landgraf v. USI Film Prods.*, 968 F.2d 427, 429-30 (5th Cir. 1992), *aff'd*, 511 U.S. 244 (1994).

As discussed above, Spring's sexual harassment claims fail as a matter of law. "Creation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case." *Penn. State Police v. Suders*, 542 U.S. 129, 149 (2004). Summary judgment was proper on Spring's constructive discharge claim.

## FLSA CLAIM

WSP was granted summary judgment on Spring's FLSA overtime claim on the ground it is barred by limitations. *See* 29 U.S.C. 255(a). Spring contends her claims are not barred by limitations because: (1) her original counterclaim gave fair notice of her claim; (2) her overtime claim was timely under the relation-back doctrine; and, (3) even if her overtime claim was not pled until April 2007, a fact issue exists as to whether WSP's violations were willful and subject to the three year statute of limitations.

On March 28, 2005, Spring filed a counterclaim asserting the following:

*Fair Labor Standards Act*. Plaintiff/Counter-Defendant's failure to pay Ms. Spring any of the commissions owed for the months of January and February 2005 constitutes a violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. 201 *et seq*. Under the FLSA, the Plaintiff/Counter-Defendant is required to pay Ms. Spring wages for all hours worked. Pursuant to the FLSA, Defendant/Counter-Plaintiff seeks payment of all wages owed, liquidated damages, and attorney's fees, interest, and all such other and further relief to which she may be entitled.

Texas follows the "fair notice" standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues in controversy and what testimony will be relevant. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000). "'A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense.'" *Id*. (quoting *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982)).

Spring's counterclaim recited "[Spring] seeks payment of all wages owed . . . ." We hold Spring's allegations in her original counterclaim were broad enough to provide WSP fair notice of Spring's overtime claim. Spring's overtime claim for the two years prior to filing the original counterclaim is not time barred.

Spring also pled WSP willfully violated the FLSA. A willful violation gives rise not only to a claim for three years of unpaid wages, but also an equal amount of unpaid wages as liquidated damages and attorney's fees, which are not available for a non-willful violation. 29 U.S.C. §§ 215-217; *see McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988).

WSP sought summary judgment on the ground there is no evidence it willfully violated the FLSA. Under the FLSA, a violation is "willful" if the employer either "'knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute.'" *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994) (quoting *McLaughlin*, 486 U.S. at 133). "If an employer acts unreasonably, but not recklessly, in determining its legal obligation" under the FLSA, its action is not willful. *McLaughlin*, 486 U.S. at 135 n. 13. The Supreme Court explained in *McLaughlin* that the willful

standard requires more than mere negligence, and more than a mere failure to seek legal advice about a potentially difficult classification decision. *Id*. at 134-35.

Spring relies on the following evidence to raise a fact issue on reckless disregard: Spring's complaints to Sachse that she was entitled to overtime, which were "offhandedly" dismissed; and the testimony of Randy Bristow, WSP's treasurer and vice-president in charge of payroll, that he relied on his personal "presumptions" and "understanding" about FLSA requirements obtained at seminars, and that he did not consult an attorney regarding those requirements.

We hold Spring did not raise a fact issue on whether WSP knew it did not comply with the FLSA or showed reckless disregard for whether it complied. The evidence presented by Spring may be sufficient to raise a fact issue on negligence but is not sufficient to raise a fact issue on reckless disregard. *See id.* (finding of willfulness cannot be based on negligence or on good-faith but incorrect assumption that pay plan complied with FLSA).

The trial court erred in granting summary judgment on the two year statute of limitations on Spring's claim that WSP violated the FLSA. However, the trial court properly granted the no evidence motion for summary judgment under the three year statute of limitations because Spring did not raise a fact issue on whether WSP willfully violated the FLSA. The summary judgment is reversed on Spring's FLSA claims under the two year statute of limitations and affirmed on Spring's claim for a willful violation of the FLSA.

## WRONGFUL INJUNCTION

To avoid Spring's wrongful injunction claim, WSP asserted in its motion for summary judgment that Texas does not recognize a cause of action for wrongful injunction based on the facts

pled by Spring. Spring alleged "Because the temporary injunction entered in this matter was wrongfully obtained, Spring is entitled to recover against the injunction bond as well as all damages proximately caused by WSP's wrongful injunction."

Texas recognizes two separate causes of action for wrongful injunction, one upon the bond ordinarily filed to obtain the injunction, and the other for malicious prosecution. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 685 (Tex. 1990), *cert. denied*, 498 U.S. 1048 (1991). The two actions differ in the kind of wrong which must be shown to establish liability and in the amount of recovery. *Id.* A cause of action upon an injunction bond is predicated upon a breach of the condition of the bond. *Id*. The claimant must prove that the temporary injunction was issued when it should not have been, and that it was later dissolved. *Id*. at 685-86. The claimant need not prove that the temporary injunction was obtained maliciously or without probable cause. *Id.* at 686. The purpose of the bond is to protect the defendant from the harm that may be caused as a result of the temporary injunction, which is granted on the lower burden of proof required of the injunction plaintiff and defendant, pending full consideration of all issues. *Id*. The damages under this claim are limited by the amount of the bond. *Id*. A cause of action for malicious prosecution requires the claimant prove the injunction suit was prosecuted maliciously and without probable cause, and was terminated in his favor. *Id*. The injunction defendant recovers actual damages that resulted from the permanent injunction suit. *Id*. Spring's counterclaim was sufficient to give notice of both causes of action referred to as wrongful injunction claims. *See id.*

WSP was not entitled to summary judgment based on its contention that Spring's pleadings failed to state a claim for wrongful injunction. *Centennial Ins. Co. v. Commercial Union Ins. Cos.*, 803 S.W.2d 479, 482 (Tex. App.—Houston [14th Dist.] 1991, no writ)(party should not circumvent

protective features of special exception procedure by urging motion for summary judgment on the pleadings or by other means when plaintiff's pleadings fail to state a claim). WSP did not file a no-evidence or traditional motion for summary judgment on Spring's wrongful injunction claim. Summary judgment is improper when the only ground is the party's failure to state a cause of action. *Tex. Dept. of Corrs. v. Herring*, 513 S.W.2d 6, 10 (Tex. 1974). We reverse and remand the order granting WSP's motion for summary judgment on Spring's wrongful injunction claim.

### ATTORNEY'S FEES

Finally, Spring counterclaimed for attorney's fees pursuant to section 15.51(c) of the Texas Business and Commerce Code. Spring sought recovery of the attorney's fees incurred in defending against WSP's suit to enforce the non-compete and non-piracy provisions in their employment agreement. The issue of attorneys's fees was presented to the trial judge at the end of the jury trial on WSP's claims against Spring. The trial court denied Spring's claim and entered findings of fact and conclusions of law.[6] Spring contends she established the non-compete and non-piracy provisions in her 1993 contract were overbroad as a matter of law, and that WSP sought to enforce those provisions to a greater extent than necessary.

The Texas Covenants Not To Compete Act applies to non-compete covenants in personal services agreements when the promisee seeks to enforce the covenant to a greater extent than necessary to protect its goodwill or other business interests. TEX. BUS. AND COM. CODE ANN. subchapter E *et. seq*. (Vernon 2002). Section 15.51 (c) provides in pertinent part:

---

[6] The trial court only addressed the threshold issue of whether Spring was entitled to attorney's fees and not the amount of the fees.

If the primary purpose of the agreement to which the covenant is ancillary is to obligate the promisor to render personal services, the promisor establishes that the promisee knew at the time of the execution of the agreement that the covenant did not contain limitations as to time, geographical area, and scope of activity to be restrained that were reasonable and the limitations imposed a greater restraint than necessary to protect the goodwill or other business interest of the promisee, and the promisee sought to enforce the covenant to a greater extent that was necessary to protect the goodwill or other business interest of the promisee, the court may award the promisor the costs, including reasonable attorney's fees, actually and reasonably incurred by the promisor in defending the action to enforce the covenant.

TEX. BUS. & COM. CODE ANN. § 15.51(c) (Vernon 2002). Because the statute provides "the court may award" attorney's fees, the award of attorney's fees is within the trial court's discretion and is not mandatory. *Bouquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998)(statutes providing party "may recover," "shall be awarded," or "is entitled to" attorneys fees are mandatory and statutes that provide court "may award" are permissive and require abuse of discretion to overturn order granting or denying award). The party claiming abuse of discretion has the burden on appeal to show the abuse of discretion. *Clade v. Larsen*, 838 S.W.2d 277, 280 (Tex. App.—Dallas 1992, writ denied). Accordingly, Spring must demonstrate the trial court abused its discretion in denying her attorney's fees.

A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to guiding principles. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997). When reviewing a trial court's decision for abuse of discretion, we must view the evidence in the light most favorable to the trial court's ruling and indulge every presumption in its favor. *Phillips & Akers, P.C. v. Cornwell*, 927 S.W.2d 276, 279 (Tex. App.—Houston [1st Dist.] 1996, no writ.). We may not reverse for an abuse of discretion because we disagree with the trial court's decision as long as that decision was within the trial court's discretionary authority. *Beaumont Bank, N.A. v. Buller*, 806

S.W.2d 223, 226 (Tex. 1991). An abuse of discretion does not exist if the trial court bases its decision on conflicting evidence and some evidence supports the trial court's decision. *Executive Tele-Communication Systems, Inc. v. Buchbaum*, 669 S.W.2d 400, 403 (Tex. App.—Dallas 1984, no writ).

The only evidence presented during the bench trial was a short excerpt of deposition testimony of WSP's president, James Sachse. Sachse's testimony established that Spring did not write or service marine insurance, contractor's coverage, or motor truck cargo coverage, or a variety of other types of coverage, while working at WSP. Sachse admitted the injunction prohibited Spring from working as an agent in competition with WSP within a 25 mile radius of WSP's principal place of business on any line of insurance and contacting any of its 5000 customers.

A predicate to an award of attorney's fees is proof that (1) WSP knew at the time the employment agreement was executed that the covenant did not contain limitations as to time, geographical area, and scope of activity to be restrained that were reasonable and the limitations imposed a greater restraint than necessary to protect WSP's goodwill or other business interest, and (2) WSP sought to enforce the covenant to a greater extent than was necessary to protect its goodwill or other business interest. Under section 15.51, Spring was required to establish these facts before the trial court could exercise its discretion to award attorney's fees. See TEX. BUS. & COM. CODE ANN. § 15.51(c) (Vernon 2002). Sachse's testimony did not establish these factors.

Based on the record before us, the trial court did not abuse its discretion in denying Spring her attorney's fees. We affirm the take nothing judgment on Spring's claim for attorney's fees under section 15.51 of the Business and Commerce Code.[7]

## CONCLUSION

The trial court's judgment is affirmed on Spring's sexual harassment, constructive discharge, and attorney's fees claims. The judgment is reversed and remanded on Spring's defamation, breach of contract, assault, FLSA, and wrongful injunction claims.

Steven C. Hilbig, Justice

---

[7] Because we hold the trial court did not abuse its discretion, we need not address whether the expiration of the injunction rendered Spring's claim for attorneys's fees moot.